OPINION OF THE COURT
AMBRO, Circuit Judge.
This appeal raises a question of first impression involving the interpretation of Chapter 13 of the Bankruptcy Code, 11 U.S.C. §§ 101 et seq., in the common circumstance of a debtor converting his or her case from a Chapter 13 adjustment of debts under a reorganization plan to a Chapter 7 liquidation of assets and distribution to creditors.[1] If at *307 the time of conversion the Chapter IB trustee is holding funds acquired post-petition by the debtor for eventual distribution to creditors under a confirmed Chapter 13 reorganization plan, must the trustee return the funds to the debtor or distribute them to creditors under the provisions of the plan? The District Court affirmed the Bankruptcy Court’s holding that those funds are to be returned to the debtor at the time of conversion. We agree and thus affirm the District Court’s decision.
I. Facts and Procedural History
Appellee Barry Michael filed a voluntary petition under Chapter 13 of the Bankruptcy Code in September 2005. In June 2006, the Bankruptcy Court confirmed his Chapter 13 reorganization plan (the “Plan”). The Plan provided that Michael would pay approximately $277 per month to the Chapter 13 trustee, Appellant Charles J. DeHart, III (the “Trustee”), for 53 months, and the Trustee would direct the monies received to creditors holding secured and priority claims. Among these creditors was GMAC Mortgage, which held a mortgage on Michael’s residence. Michael agreed also to make regular mortgage payments to GMAC outside of the Plan. The Plan further provided that, to the extent funds were available, creditors holding unsecured claims would be paid pro rata. To complete his bargain and fund the Plan, Michael allowed his wages to be attached and paid directly to the Trustee.
Michael, however, was unable to make mortgage payments to GMAC outside of the Plan, and in August 2006 the Bankruptcy Court granted GMAC relief from the automatic stay to allow it to foreclose on Michael’s residence. Because Michael did not move to amend the Plan or modify the wage attachment order, the Trustee continued to receive automatic payments from Michael’s employer. When the Trustee attempted to forward the funds to GMAC as provided by the Plan, GMAC refused to accept the payments (ostensibly because it wanted to foreclose—pun intended—an estoppel and/or waiver defense to its mortgage foreclosure). The funds continued to accumulate in the Trustee’s account until Michael moved to convert his case to Chapter 7 in October 2009.
Several days after the conversion, Michael filed a motion seeking an order compelling the return to him by the Trustee of the accumulated funds, which amounted to $9,181.62. The Trustee objected, arguing that the funds should be distributed pro rata to unsecured creditors as provided by the Plan.
Both the Bankruptcy and District Courts noted that the Bankruptcy Code does not provide a clear answer on whether undistributed plan payments held by a Chapter 13 trustee should be returned to the debtor or distributed to creditors under a plan when a Chapter 13 case is converted to Chapter 7. Each court assessed the main arguments advanced by the parties and discussed by other (mainly bankruptcy) courts regarding statutory language, legislative intent, and the goals of the Code. They both concluded that the *308 funds must be returned to Michael. The Trustee filed a timely notice of appeal.[2]
II. Discussion
We have a pure question of law— what does the Bankruptcy Code require a Chapter 13 trustee to do with undistributed funds received pursuant to a confirmed Chapter 13 plan when that Chapter 13 case is converted to Chapter 7? Not only does the Code provide no clear answer to this question, in reading it one finds an internal tension, as separate provisions seemingly lead to divergent results.
Both the Bankruptcy and District Courts began their analyses, as do we, with the Bankruptcy Reform Act of 1994’s amendments to the Bankruptcy Code. Included in those amendments was § 348(f), on which this appeal ultimately turns. That section provides that on conversion of a case from Chapter 13 to another Chapter, “property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion.” 11 U.S.C. § 348(f)(1)(A) (emphasis added). In the case of a bad faith conversion, “the property of the estate in the converted case shall consist of the property of the estate as of the date of conversion.” Id. § 348(f)(2) (emphasis added).
Prior to the addition of § 348(f), courts considering the disposition of funds held by a Chapter 13 trustee at the time of conversion reached three different results: the funds were (i) property of the new Chapter 7 estate, (ii) property of the debt- or, or (iii) property of creditors under a confirmed Chapter 13 plan. See, e.g., In re Boggs, 137 B.R. 408, 411 (Bankr.W.D.Wash.1992) (concluding that the debtor is entitled to undistributed funds held by the Chapter 13 trustee on conversion to Chapter 7); Waugh v. Saldamarco (In re Waugh), 82 B.R. 394, 400 (Bankr.W.D.Pa.1988) (holding that the Chapter 13 trustee must pay out undistributed funds to the creditors as provided by the Chapter 13 plan on conversion); In re Tracy, 28 B.R. 189, 190 (Bankr.D.Me.1983) (holding that the Chapter 13 trustee must turn over undistributed funds to the Chapter 7 trustee on conversion). Courts of Appeals primarily debated whether the funds became property of the Chapter 7 estate. Compare Calder v. Job (In re Colder), 973 F.2d 862, 865-66 (10th Cir.1992) (holding that post-petition funds that were part of the Chapter 13 estate became property of the Chapter 7 estate on conversion to Chapter 7), Matter of Lybrook, 951 F.2d 136, 138 (7th Cir.1991) (same); and Armstrong v. Lindberg (In re Lindberg), 735 F.2d 1087, 1089-90 (8th Cir.1984) (same), with Bobroff v. Cont’l Bank (In re Bobroff), 766 F.2d 797, 803-04 (3d Cir.1985) (holding that a post-petition tort claim did not become property of the Chapter 7 estate on conversion).
Section 348(f) removed the first result, but did not resolve explicitly whether the Chapter 13 trustee should give the funds to the debtor or distribute them to credi *309 tors under the confirmed Chapter 13 plan. As developed below, § 348(f)’s language and legislative history express Congress’s preference as to what property belongs to a debtor after conversion, and ultimately direct our decision.
To understand the full import of § 348(f), we provide a brief overview of a Chapter 13 case. The filing of a Chapter 13 petition creates an estate consisting of all of the debtor’s legal and equitable interests in property. 11 U.S.C. §§ 301(a), 541(a).[3] “[I]n addition to the property specified in section 541” that exists at the filing of the Chapter 13 petition, the estate includes “all property of the kind specified in [section 541] that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first....” Id. § 1306(a). This includes “earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted....” Id. § 1306(b). As is the ease here, these earnings ordinarily fund the Chapter 13 plan. See, e.g., 8 Collier on Bankruptcy ¶ 1322.01 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2012) (“Chapter 13 was designed to facilitate adjustments of the debts of individuals with regular income through flexible repayment plans funded primarily from future income.”).
A debtor must begin making payments to the Chapter 13 trustee “not later than 30 days after the date of the filing of the plan or the order for relief [defined below], whichever is earlier....” 11 U.S.C. § 1326(a)(1). The trustee must retain these payments “until confirmation or denial of confirmation [of a plan].... If a plan is not confirmed, the trustee shall return any such payments not previously paid ... to the debtor, after deducting any unpaid claim allowed under section 503(b).” Id. § 1326(a)(2).
Confirmation of a reorganization plan under Chapter 13 affects the estate, debtor, creditors, and Chapter 13 trustee. The confirmed plan vests all of the property of the estate in the debtor, id. § 1327(b); binds the debtor and its creditors, id. § 1327(a); and obligates the trustee to distribute the debtor’s payments under the plan to creditors, id. § 1326(a)(2), (c).[4] At any time during the Chapter 13 proceeding, the debtor has a near absolute right to convert his case. Id. § 1307(a) (“The debtor may convert a case under this chapter to a case under chapter 7 of this title at any time. Any waiver of the right to convert under this subsection is unenforceable.”). Regardless when conversion takes place, it “does not effect a change in the date of the filing of the petition.” Id. § 348(a).
*310 Conversion also “terminates the services” of the Chapter 13 trustee. Id. § 348(e). Though his services are ended after conversion, the trustee is required to account for the funds that came into his possession by filing a final report under Federal Rule of Bankruptcy Procedure 1019(5)(B)(ii). In addition, if the case is converted prior to confirmation of a plan, the trustee must return any payments held by him to the debtor after deducting adequate funds for him to pay allowed administrative expense claims. See 11 U.S.C. § 1326(a)(2).
Accordingly, when a debtor converts a Chapter 13 case to Chapter 7, the order converting the case is effectively backdated to the time of the order for relief under Chapter 13, which is the date of the filing of the Chapter 13 petition. See id. § 301(b) (“The commencement of a voluntary case under a chapter of this title constitutes an order for relief under such chapter.”). Section 348(f), to repeat, states that “property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor as of the date of conversion.” Id. § 348(f)(1) (emphasis added). Because under § 348(a) “the date of the filing of the petition” is the date the debtor filed the Chapter 13 petition, this suggests that property of the Chapter 13 estate acquired post-petition is excluded from the property of the new Chapter 7 estate. But does that property belong to the debtor or to its creditors waiting for Chapter 13 plan payments?
It is here we turn to § 1327(b), which vests all property of the Chapter 13 estate in the debtor on plan confirmation. The implication is that property held by the Chapter 13 trustee after plan confirmation is “under the control of the debtor as of the date of [a later] conversion” for purposes of § 348(f)(1). Even before the addition of § 348(f), the Ninth Circuit Court arrived at this conclusion regarding the vesting of monies received by the Chapter 13 trustee from the debtor during the Chapter 13 proceeding. Arkison v. Plata (In re Plata), 958 F.2d 918 (9th Cir.1992).
Confirmation ... binds the creditors and the debtor to the provisions of the plan and vests all property of the estate in the debtor except as otherwise provided in the plan. The monies received by the Chapter 13 trustee from the debtors during the Chapter 13 proceeding became part of the Chapter 13 estate. The debtors’ creditors acquired a nonvested interest in these monies by the plan and the order confirming the plan. A Chapter 13 creditor’s interests do not vest until the monies are distributed .... The debtors’ interests in the monies have not been extinguished.
Id. at 922 (quoting Resendez v. Lindquist, 691 F.2d 397, 399-400 (8th Cir.1982) (Bright, J., dissenting)). Moreover, under § 348(e), after conversion the services of the Chapter 13 trustee are terminated, which seemingly renders it powerless to make payments to creditors under a Chapter 13 plan.
Nevertheless, confirmation of a plan is a significant event in a Chapter 13 case. This has led several courts, in decisions primarily written before the addition of § 348(f), to conclude that undistributed plan payments held by a Chapter 13 trustee should be disbursed to creditors after conversion. They reason that the funds should be treated as trust funds for the benefit of creditors, or that creditors held a vested interest in the funds at the time the trustee received them, because the debtor voluntarily parted with the funds and §§ 1326(a)(2) and (c) state that the trustee “shall” distribute payments as pro *311 vided by the plan. See, e.g., In re Galloway, 134 B.R. 602, 603 (Bankr.W.D.Ky.1991) (holding that after a debtor “voluntarily part[s] with wages and deliver[s] them to the custody of a trustee in performance of a confirmed Chapter 13 plan, the creditors have a vested right to receive those payments pursuant to the plan”); In re Waugh, 82 B.R. at 400 (observing that the word “shall” in § 1326(a)(2) “creates the condition of a trust. Creditors have the right to the funds in an active confirmed chapter 13 plan on payment by the debtor”); In re Rutenbeck, 78 B.R. 912, 913 (Bankr.E.D.Wis.1987) (“[T]he undistributed funds ought to be treated as trust funds for the benefit of the creditors under the confirmed plan and distributed to those creditors in accordance with the terms of the plan.”); In re Lennon, 65 B.R. 130, 137 (Bankr.N.D.Ga.1986) (holding that the “mandatory provision” of § 1326(a)(2) “has the effect of vesting an interest in creditors provided for by a confirmed plan in all payments pursuant to such plan”).
These courts also emphasize that a confirmed plan binds creditors to a new relationship with a debtor, one that requires creditors to forgo certain rights in exchange for the debtor’s promise to make payments under the plan. See, e.g., Ledford v. Burns (In re Burns), 90 B.R. 301, 304 (Bankr.S.D.Ohio 1988) (“[A] Chapter 13 Plan represents a legislatively sanctioned, and judicially approved!,] new series of rights and responsibilities among the debtor and the debtor’s creditors.”). Thus despite the termination of the Chapter 13 trustee’s services after conversion, they conclude that a “valid confirmation order of the Bankruptcy Court should not be made a nullity by a later failure of the debtor to observe a confirmed plan.” Spero v. Porreco (In re Porreco), 426 B.R. 529, 537 (Bankr.W.D.Pa.2010) (quoting In re Waugh, 82 B.R. at 400); see also In re Pegues, 266 B.R. 328, 336-37 (Bankr.D.Md.2001) (“Although the service of the chapter 13 trustee is terminated by Section 348(e), it is clear that Congress intended that the chapter 13 trustee shall wind up the affairs of the chapter 13 estate, including disbursing monies on hand to the appropriate recipient.”); In re Burns, 90 B.R. at 304 (“While it would be inappropriate to ignore other provisions of the Bankruptcy Code, it would be equally inappropriate to fail to judicially implement an order that the court has previously entered, particularly one in which the debtors voluntarily proposed the provisions, advocated their adoption and requested the court to order as binding upon the debtors and their creditors.”).
Additionally, these courts further cite § 1326(a)(2) for its language requiring the Chapter 13 trustee to return any payments held by it to the debtor if a plan is not confirmed (after deducting funds for it to pay allowed administrative expense claims). Read alone, this section arguably indicates that if a plan is not confirmed the trustee must return accumulated funds to the debtor, and that if a plan is confirmed the trustee, by implication stemming from the absence of similar language, is required to distribute accumulated funds to creditors as provided by the plan. That is, if Congress intended for undistributed funds held by the trustee post-confirmation to be returned to a debtor, it could have included similar language regarding post-confirmation payments in § 1326(a)(2). See In re Burns, 90 B.R. at 304. Moreover, holding that the funds are to be returned to debtors produces the anomalous result that all or a portion of administrative expense claims may be paid in a Chapter 13 case converted pre-confir-mation, but not in one converted post-confirmation.
*312 In contrast, other courts, again in decisions written primarily before the addition of § 348(f), have read the same provisions of the Code and concluded that the debtor is entitled to undistributed plan payments held by the Chapter 13 trustee at the time of conversion. These courts focus on § 348(a) and the Congressional policy of encouraging debtors to attempt Chapter 13 without penalty if the attempt fails. See, e.g., In re Boggs, 137 B.R. at 411 (“[T]he Congressional policy of encouraging debtors to repay their creditors via Chapter 13 is furthered by debtors (and their counsel) knowing they will not be penalized for attempting Chapter 13.”); McCullough v. Luna (In re Luna), 73 B.R. 999, 1003 (N.D.Ill.1987) (concluding that § 348(a), “which determines the operative date for the filing of [the debtor’s] Chapter 7 proceeding, protects [the debtor] from being penalized by providing that the Chapter 7 estate is deemed to have been filed at the time the Chapter 13 estate was filed”); In re Bullock, 41 B.R. 637, 640 (Bankr.E.D.Pa.1984) (“[T]he case is deemed to have been filed as a chapter 7 proceeding and that portion of the debtor’s postpetition wages, which were deducted from his salary, were deposited in the chapter 7 estate although they were not properly includable therein.... Since the deducted wages were not part of the chapter 7 estate, the debtor is entitled to recover such wages in full.... ”).
In response to those courts holding that undistributed funds should be paid out to creditors, contrary rulings have reasoned that conversion effectively vacates the confirmed plan. “[Section] 1307(a) gives debtors the absolute right to convert to Chapter 7 at any time. Analytically, a Chapter 13 plan has no relevance to or import in a case under any other chapter.... If a plan is vacated or no longer in effect, a Chapter 13 trustee has no authority for further disbursement to creditors.” In re Boggs, 137 B.R. at 410; see also In re Doyle, 11 B.R. 110, 111 (Bank.E.D.Pa.1981) (holding that, once a case is converted, the order confirming the plan is no longer effective). Other decisions simply conclude that the termination of the trustee’s services “precludes the Trustee from taking any action with respect to these funds after the conversion.” In re Luna, 73 B.R. at 1002; see also In re Perkins, 36 B.R. 618, 620 (Bank.M.D.Tenn.1983) (holding that the Chapter 13 trustee loses all authority to act when the conversion becomes effective).
These courts also find nothing “unjust” in returning undistributed plan payments to a debtor. Rather, they note that creditors ultimately will receive as much, if not more, than they would have received if the debtor initially had filed under Chapter 7.
Since § 1325(a) requires a finding that the holder of each allowed unsecured claim will receive not less than the holder would receive under Chapter 7 to confirm a plan, it is not self-evident that the dilution effect of treating pre-con-version creditors as pre-petition creditors in the converted Chapter 7 necessarily inflicts a net loss on actual pre-petition creditors. Those creditors have had the benefit of distribution from debtors’ wage contributions, which would not have been available to them under Chapter 7. In all, there seems no inherent inequity in refunding undis-bursed wage contributions to debtors on conversion.
In re Boggs, 137 B.R. at 410.
Notwithstanding strong arguments regarding the binding effect of plan confirmation, those courts holding that undistributed payments under a confirmed Chapter 13 plan should be disbursed to creditors after conversion overlook that no provision in the Bankruptcy Code classifies any property, including post-petition *313 wages, as belonging to creditors. Rather, property comes into and flows out of the estate. In the context of a Chapter 13 case, § 1327(b) vests all property of the Chapter 13 estate in the debtor on confirmation of the plan. Thus when the debtor transfers funds to the Chapter 13 trustee to fulfill its obligations under a confirmed plan (or, as here, wages are assigned directly to the Chapter 13 trustee under a garnishment order), the funds become part of the estate, and the debtor retains a vested interest in them. Though creditors have a right to those payments based on the confirmed plan, the debtor does not lose his vested interest until the trustee affirmatively transfers the funds to creditors. Also, § 1326(a)(2) and (c) only address the obligation of the trustee to distribute payments in accordance with a confirmed plan; they do not vest creditors with any property rights.
Conversion to a Chapter 7 case necessarily ends the Chapter 13 ease, which also terminates that Chapter 13 estate. Section 348(f) clarifies what becomes of property of the now nonexistent Chapter 13 estate. It provides that property of the Chapter 7 estate “consists] of property of the estate, as of the date of filing of the [Chapter 7] petition, that remains in the possession of or is under the control of the debtor on the date of conversion.” 11 U.S.C. § 348(f)(1) (emphases added). Because § 1327(b) vests all property of the Chapter 13 estate in the debtor, including any post-petition property held by the Chapter 13 trustee at the time of conversion (such as funds transferred to the estate for eventual distribution to creditors), on conversion property of the Chapter 13 estate usually is “under the control of the debtor.”[5] And because § 348(a) establishes that conversion does not change the effect of the Chapter 13 petition’s filing, the Chapter 7 petition date is deemed to be the same date that the debtor began the Chapter 13 case. Hence property acquired post-petition that is in the Chapter 13 estate at the time of conversion is not property of the new Chapter 7 estate. Rather, the debtor retains a vested interest in the property, and thereby the property reverts to the debtor on conversion, assuming that the debtor does not convert in bad faith.[6] Moreover, absent anything *314 to the contrary (and we know of nothing), by providing that a debtor who converts in bad faith is not entitled to this post-petition property, § 848(f)(2) logically requires that a debtor receive the property if he acts in good faith.
We also believe that returning undistributed funds to the debtor better aligns with the Chapter 13 trustee’s limited duties post-conversion and the effect of conversion on a confirmed Chapter 13 plan. Though the trustee must account for the funds that came into his possession by filing a final report after conversion under Federal Rule of Bankruptcy Procedure 1019(5)(b)(ii), it does not follow that he is permitted to distribute funds under a plan that is no longer operative, particularly if those funds remain vested in the debtor until distribution. In light of § 348(e)’s termination of the trustee’s services post-conversion, his duties thereafter should be narrowly construed. If a Chapter 13 case is converted to a Chapter 7 case after plan confirmation, the vested funds revert to the debtor, and their return should be considered part of the Chapter 13 trustee’s short list of remaining duties.[7]
The legislative history of § 348(f) supports that Congress’s intended outcome is that payments held by the Chapter 13 trustee revert to the debtor on conversion. Congress stated that it was overruling the holdings of Matter of Lybrook and similar cases, and “adopting the reasoning” of our decision in Bobrojf. H.R.Rep. No. 835, 103d Cong., 2d Sess. 57 (1994). It included the following illustration of the “serious disincentive to file chapter 13 filings” it sought to eliminate with § 348(f). Id.
[A] debtor who had $10,000 equity in a home at the beginning of the case, in a State with a $10,000 homestead exemp *315 tion, would have to be counseled concerning the risk that after he or she paid off a $10,000 second mortgage in the chapter 13 case, creating $10,000 in equity, there would be a risk that the home could be lost if the case were converted to chapter 7 (which can occur involuntarily). If all of the debtor’s property at the time of conversion is property of the chapter 7 estate, the trustee would sell the home ... to realize the $10,000 in equity for the unsecured creditors and the debtor would lose the home.
Id. By analogy from this example, a debtor who contributes post-petition earnings to the Chapter 13 estate under a confirmed plan when the Chapter 13 trustee has not distributed those funds to creditors should not lose those earnings on conversion. Section 348(f)(1) provides that the earnings are not property of the new Chapter 7 estate. The Chapter 7 trustee thus cannot transfer those earnings to unsecured creditors. Holding that the Chapter 13 trustee must disburse the earnings to creditors under the Chapter 13 plan after conversion would result in creditors receiving a portion of the Chapter 13 estate when the legislative history of § 348(f) suggests that this property belongs to the debtor.
Such an outcome also would dissuade debtors from filing under Chapter 13. Encouraging them to attempt to repay their debts through a reorganization plan rather than liquidate was the reasoning underlying our decision in Bobroff. We noted that
[i]f debtors must take the risk that property acquired during the course of an attempt at repayment will have to be liquidated for the benefit of creditors if chapter 13 proves unavailing, the incentive to give chapter 13 — which must be voluntary — a try will be greatly diminished. Conversely, when chapter 13 does prove unavailing “no reason of policy suggests itself why the creditors should not be put back in precisely the same position as they would have been had the debtor never sought to repay his debts.... ”
Bobroff, 766 F.2d at 803 (quoting In re Hannan, 24 B.R. 691, 692 (Bankr.E.D.N.Y.1982)). In this context, holding that the Chapter 13 trustee must distribute undisbursed plan payments to creditors would contravene Congress’s reasoning in adopting § 348(f).
Additionally, in adding § 348(f) Congress rejected the analysis of those Courts of Appeals holding that undistributed funds after Chapter 13 plan confirmation belong to creditors. Those Courts based their decisions on fairness to creditors, concluding that “a rule of once in, always in[,] is necessary to discourage strategic, opportunistic behavior that hurts creditors .... ” Matter of Lybrook, 951 F.2d at 137. To account for such “game-the-system” behavior, Congress included § 348(f)(2), which in effect “gives the court discretion, in a case in which the debtor has abused the right to convert and converted in bad faith, to order that all property held at the time of conversion shall constitute property of the estate in the converted [here, Chapter 7] case.” H.R.Rep. No. 835, 103d Cong., 2d Sess. 57 (1994). The punishment for acting in bad faith is that property that otherwise would belong to the debtor goes instead to his Chapter 7 estate for distribution to creditors. But, as already noted, if a debtor does not act with bad faith in converting, logically the property should not go automatically to creditors; otherwise the penalty for a bad faith conversion would be diminished significantly.
Indeed, since the passage of § 348(f), all Courts of Appeals that have considered the disposition of a Chapter 13 estate’s property on conversion to Chapter 7 have concluded that the policy reasoning we *316 expressed in Bobroff now has become settled law.[8] See Stamm v. Morton (In re Stamm), 222 F.3d 216, 217-18 (5th Cir.2000) (noting that in Baker v. Rank (In re Baker), 154 F.3d 534 (5th Cir.1998), “[w]e stated that Congress added Section 348(f) ‘to resolve the circuit split,’ quoted the relevant statutory language, and noted that Congress ‘took issue with In re Ly-brook.’ The clear implication ... is that Section 348(f)(1), where applicable, establishes that the post-petition income does not remain property of the estate upon conversion.” (quoting In re Baker, 154 F.3d at 536 n. 2)); Young v. Key Bank of Maine (In re Young), 66 F.3d 376, 378 (1st Cir.1995) (concluding that post-petition contributions of income by the debtor pursuant to a confirmed plan were not property of the Chapter 7 estate on conversion and noting that “[t]he Bankruptcy Reform Act of 1994 answered the very question that confronts us. It essentially codified the Bobroff rule ... ”). See also Bell v. Bell (In re Bell), 225 F.3d 203, 217 (2d Cir.2000) (observing that “[i]n the Bankruptcy Reform Act of 1994, Congress resolved this circuit split ... by enacting 11 U.S.C. § 348(f)”); 8 Collier on Bankruptcy ¶ 348.07[1] (“The addition of [§ 348(f) ] clarified that Congress had intended the result reached by cases that had not included in the postconversion chapter 7 estate the property acquired by the debtor during the preconversion chapter 13 case.”).
Overall, a textual reading of § 348(f), particularly in light of its legislative history, leads us to conclude that undistributed plan payments held by a Chapter 13 trustee at the time of conversion must be returned to the debtor absent bad faith. This result furthers Congress’s preference that on conversion to Chapter 7 a Chapter 13 debtor receive all post-petition property that is held by the Chapter 13 trustee, but still is under the control of the debtor, so that debtors are encouraged to attempt to repay their debts through reorganization rather than liquidation.
We recognize that a practical consequence of this method of encouragement is that, when a debtor converts to Chapter 7 after a Chapter 13 plan has been confirmed, the total amount of payments to creditors under the plan will depend on the timing of conversion and the practices of the Chapter 13 trustee. The Bankruptcy Code requires the Chapter 13 trustee to make disbursements “as soon as practicable.” 11 U.S.C. § 1326(a)(2). In practice, the most efficient method of administering payments may be for the trustee to accumulate and distribute them to creditors at an established time. See, e.g., In re Hardin, 200 B.R. 312, 313 (Bankr.E.D.Ky.1996) (noting that “often some accumulation will occur ... prior to the making of a distribution to creditors”). For example, some trustees make plan disbursements twice a month, while some only once a month. Or a trustee may be holding funds for a reason particular to a case, as here. Section 348(f)(2)’s bad faith provision may correct for a debtor’s opportunistic behavior, but outside a finding of bad faith it will not prevent a converting debtor receiving funds intended initially for Chapter 13 creditors. To deal with this potential hap- *317 penstanee, we foresee that creditors will request more frequent distributions from the Chapter 13 trustee.[9]
# % # Hí # ❖
As applied here, when the Plan was no longer feasible, Michael exercised the right to convert his case to Chapter 7 and sought the return of his post-petition earnings still in the Trustee’s possession. Because there is no evidence that he converted in bad faith, those funds are his property by virtue of § 348(f), and should not be distributed to his creditors. The Bankruptcy and District Courts’ decisions reflect the result that Congress contemplated in enacting § 348(f). We thus affirm.

. The primary goal of a Chapter 13 case is the confirmation and completion of a reorganization plan, which results in the discharge of the Chapter 13 debtor’s debts. See 11 U.S.C. § 1328(a) (providing for discharge' "as soon as practicable after completion by the debtor of all payments under the plan”). If a debtor cannot confirm or complete a plan, his case most likely either will be converted to a Chap *307 ter 7 liquidation or dismissed. But see id. § 1328(b) (detailing the circumstances in which a debtor may receive a discharge despite not completing a plan). Empirical studies show that about a third of Chapter 13 debtors successfully confirm and complete a plan. See, e.g., Katherine Porter, "The Pretend Solution: An Empirical Study of Bankruptcy Outcomes,” 90 Tex. L.Rev. 103, 107-11 (2011) (summarizing studies published from 1989 through 2006, all of which concluded that only one in three cases filed under Chapter 13 ended in a completed reorganization plan, and noting that the ratio of discharge to conversion or dismissal has "persisted for more than thirty years”).

. The Bankruptcy Court had jurisdiction under 28 U.S.C. §§ 157 and 1334. The District Court had jurisdiction under 28 U.S.C. §§ 158(a) and 1334. We have jurisdiction under 28 U.S.C. §§ 158(d) and 1291. Because a district court sits as an appellate court to review a bankruptcy court, we review a bankruptcy court’s “legal determinations de novo, its factual findings for clear error, and its exercises of discretion for abuse thereof.” In re Goody’s Family Clothing Inc., 610 F.3d 812, 816 (3d Cir.2010).
The Chapter 13 Standing Trustees in our Circuit filed an amicus brief in support of the Trustee. The National Association of Consumer Bankruptcy Attorneys submitted an amicus brief in support of Michael.

. In pertinent part, § 301 reads: "A voluntary case under a chapter of this title is commenced by the filing with the bankruptcy court of a petition under such chapter by an entity that may be a debtor under such chapter.” Section 541(a) provides that ”[t]he commencement of a case under section 301 ... creates an estate.”

. In pertinent part, § 1326(a)(2) reads: “If a plan is confirmed, the trustee shall distribute any such payment [made under § 1326(a)(1) ] in accordance with the plan as soon as is practicable.” Section 1326(c) similarly states: "Except as otherwise provided in the plan or in the order confirming the plan, the trustee shall make payments to creditors under the plan.” Sections 1327(a) and (b), respectively, provide that: "[t]he provisions of a confirmed plan bind the debtor and each creditor,” regardless whether a creditor accepted the plan; and "[e]xcept as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.”

. Not all property necessarily will meet this requirement. For example, a debtor whose title to particular property is terminated by a divorce decree while his Chapter 13 case is pending no longer has control of the property when the case is converted to Chapter 7, and thus the property is not part of the Chapter 7 estate after conversion even though it was included initially in the Chapter 13 estate. See, e.g., Yoon v. Krick (In re Krick), 373 B.R. 593, 608 (Bankr.N.D.Ind.2007) (holding that a parcel of real estate that was included in a couple’s Chapter 13 estate at the time of the filing of their Chapter 13 petition, and in connection with marital dissolution proceedings was determined to be the property of the parents of the former wife debtor, was not property of that debtor's converted Chapter 7 estate because she did not have an interest in the real estate and thus it was not under her control).

. On the issue of vesting, the Trustee draws our attention to § 349(b)(3), which provides that the dismissal of a case under the Bankruptcy Code, including a Chapter 13 case, "revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title.” None of the sub-sections of § 348 contains similar "revesting” language. As such, it may be argued that Congress intended to distinguish the two methods of terminating an estate (conversion and dismissal), and that if it meant for property of the estate to "revest” in the debtor on conversion, it would have included similar language in § 348. See In re Plata, 958 F.2d at 923 (Brunetti, J., dissenting) (distinguishing §§ 348 and 349). However, in the Chapter 13 context this argument overlooks that (i) under § 1326(a)(2) the trustee must return all payments held by it to the debtor if a plan is not confirmed, or (ii) under § 1327(b) proper *314 ty of the estate already is vested in the debtor at the time of the conversion after confirmation of a plan. Sections 348 and 349 are broad provisions applicable to every Chapter of the Bankruptcy Code. The specific provisions of Chapter 13 supersede any distinction that may be read into these proceeding general provisions.
Moreover, if a Chapter 13 debtor is concerned about obtaining funds held by the Chapter 13 trustee, he can dismiss his case rather than convert. As noted by the Ninth Circuit Court, we can discern "no justification for requiring a debtor to dismiss, rather than convert ... [,] in order to preserve his exemption rights. Aside from creating a trap for the unwary, such a requirement would merely elevate form over substance and inject a needless degree of extra work on the part of all concerned." In re Plata, 958 F.2d at 922; see also In re Boggs, 137 B.R. at 410 ("Debtors, whose motion was prompted in part by health problems, are willing to have their case dismissed if necessary to obtain the funds the Trustee holds.”).

. In the pre-confirmation context, the trustee is obligated to pay allowed administrative expenses from accumulated payments he is holding. Id. § 1326(a)(2). Though this creates the anomalous outcome that if a Chapter 13 proceeding is converted pre-confirmation administrative expense claims will be paid from undistributed plan payments, but if the proceeding is converted post-confirmation no administrative expense claims can be paid from undistributed plan payments, this inconsistency is addressed by the Federal Rules of Bankruptcy Procedure. Rule 1019(6) provides for the filing after conversion of pre-conversion administrative expense claims. Fed. R. Bank. P. 1019(6) ("Upon the filing of the schedule of unpaid debts incurred after commencement of the case and before conversion, the clerk, or some other person as the court may direct, shall give notice to those entities listed on the schedule of the time for filing a request for payment of an administrative expense....”).
In addition, if a debtor continues a Chapter 13 case until a plan is confirmed before converting merely to escape the trustee’s payment of administrative expense claims under § 1326(a)(2), the debtor should be found to have converted in bad faith under § 348(f)(2), and all post-petition property should be awarded to the Chapter 7 estate to be distributed to creditors, including those holding administrative expense claims.

. The Trustee argues that the reasoning of Bobroff does not apply here because it did not involve a confirmed plan. Though confirmation of a plan is a significant event in a Chapter 13 case, nothing in Bobroff suggests the pre-confirmation status of that bankruptcy case was critical to our reasoning, nor does anything in the language of § 348(f) or its legislative history indicate Congress's intent that bankruptcy courts treat undistributed post-petition property differently depending on whether the Chapter 13 case was converted before or after confirmation of the plan.

. Creditors may avail themselves of other options to increase the likelihood that they will receive payments made by a debtor under a confirmed plan.
(1) If a Chapter 13 trustee is accumulating funds because a creditor is refusing to receive payments under the plan, as here, creditors can move to modify the plan. See 11 U.S.C. § 1329(a)(1) ("At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the ... holder of an allowed unsecured claim, to ... increase or reduce the amount of payments on claims of a particular class provided for by the plan.”).
(2) Creditors can move to compel the trustee to make distributions under the plan immediately after the debtor files its motion to convert.
(3)Section 1327(b) provides that "[e]xcept as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.”
Creditors can object to a proposed plan that does not provide that plan payments vest in creditors immediately on receipt by the Chapter 13 trustee. They likewise can request that similar language be included in the Bankruptcy Court’s order confirming the plan. Though we do not rule on the issue, such language may be sufficient to remove undistributed plan payments held by the trustee from property "under the control of the debt- or on the date of conversion.” 11 U.S.C. § 348(f)(1).