**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3919
_____

IN RE:  WORLDSPACE, INC., et al.,
Debtors

MATHEWKUTTY SEBASTIAN,
Appellant

v.

DONALD J. FRICKEL; ROBERT A. SCHMITZ;
SHEARMAN & STERLING LP; QUEST TURNAROUND ADVISORS LLC;
CHARLES M. FORMAN as Chapter 7 Trustee of WorldSpace, Inc. et al., Nominal
Defendant
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 1-15-cv-00025)
District Judge:  Hon. Gregory M. Sleet
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
June 6, 2017
_____

Before:  CHAGARES, GREENAWAY, JR., and VANASKIE, *Circuit Judges*

(Filed: November 16, 2017)
_____

OPINION[*]

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

_____

VANASKIE, *Circuit Judge.*

This appeal in a bankruptcy case turns on the question of whether the Debtor,

WorldSpace, Inc., was contractually obligated to Appellant Mathewkutty Sebastian under

a written employment contract that set forth the terms of Sebastian's employment with a

subsidiary of WorldSpace, WorldSpace Middle East FZCo ("FZCo").  The Bankruptcy

Court concluded that WorldSpace was not an obligor under the employment contract, and

the District Court affirmed that conclusion.  We agree, and will affirm the dismissal of

the derivative action brought by Sebastian on the ground that he lacks creditor standing.

**I.**

Sebastian's claim to standing as a creditor of WorldSpace rests upon a July 1,

2008 three page letter which begins as follows:

> Dear Mr. Sebastian,
>
> I am pleased to reconfirm your employment with WorldSpace Middle East
> FZCo (*the "Company"*), located in Dubai, United Arab Emirates that you
> have held beginning in January, 2004.  Your employment will be in the
> position of Managing Director, WorldSpace Middle East FZCo.  In this
> position you will report to the Chief Operating Officer of WorldSpace, Inc.
> or his/her designate.  You will be responsible for the following:
>
> *        Developing and implementing strategic and tactical plans for
> achieving *the Company's* operational, financial and strategic goals in the
> Middle Eastern region
> *        Managing *Company* staff located in the Middle Eastern region
>
> *The Company* reserves the right to assign additional responsibilities
> according to its needs and requirements prevailing at the time.

2

(App. 150) (emphasis added). The letter goes on to state that Sebastian's "employment with *the Company* shall be 'at will,'" and that the "letter is the complete offer for employment and may not be amended or altered in any way by oral statements, and can only be altered by a written amendment signed by an authorized signatory of *the Company*." (*Id.* at 152) (emphasis added). The letter was signed by Gregory B. Armstrong under the title of Chief Operating Officer ("COO") of WorldSpace. Sebastian counter-signed the letter, signifying his acceptance of the terms of employment.

Four months after the letter was signed, WorldSpace commenced a Chapter 11 bankruptcy case. FZCo was not a party to the bankruptcy case. WorldSpace hired Appellee law firm Shearman & Sterling to represent it in the bankruptcy process, and the Bankruptcy Court approved Appellee Robert A. Schmitz to serve as WorldSpace's restructuring officer. Schmitz's company is Appellee Quest Turnaround Advisors LLC.

In March 2010, Schmitz told Sebastian to wind up FZCo's Dubai operations. Sebastian did as directed. By letter dated March 9, 2010, Sebastian's resignation as Managing Director of FZCo was accepted by WorldSpace as "the majority shareholder of [FZCo]." *(Id.* at 143.)

In late May of 2010, WorldSpace filed a motion to approve the sale of its assets for $5.5 million. On June 2, 2010, the Bankruptcy Court approved the sale.

In November of 2010, Sebastian submitted three proofs of claim, each in the identical amount of $170,705.90 for "salaries/wages for services rendered."[1] *(Id.* at 149.)

---

[1] Two of the claims were withdrawn as duplicative, and we will confine our discussion to the proof of claim that was not withdrawn, Claim #353.

3

In support of these proofs of claim, Sebastian submitted a copy of the July 1, 2008 letter agreement. WorldSpace objected to the proofs of claim on the ground that Sebastian was an employee of non-debtor FZCo, and not WorldSpace.

Considerable time passed with the WorldSpace estate neither paying Sebastian's claim nor seeking confirmation of a Chapter 11 plan. Sebastian alleges that during this period Appellees made representations suggesting that WorldSpace possessed sufficient funds to pay his claim. But in reality, these representations were, according to Sebastian, *mis*representations. Sebastian claims that the Appellees dithered in disclosing the inability of WorldSpace to reorganize so that they could take what remained of WorldSpace's assets for themselves. Finally, in May 2012—three-and-a-half years after filing for Chapter 11—WorldSpace, over Sebastian's objection, successfully moved the Bankruptcy Court to convert its case to Chapter 7. The Bankruptcy Court appointed a Chapter 7 trustee to wind up the affairs of WorldSpace.

Almost two years later, Sebastian filed a derivative action against the Appellees on behalf of the entire bankruptcy estate, arguing he was a creditor because of the $170,705.90 he believed was owed to him by WorldSpace. He alleged that Appellees had breached their fiduciary duties to the WorldSpace estate by running up fees while delaying WorldSpace's conversion to Chapter 7. Appellees moved to dismiss the derivative action. The Bankruptcy Court granted the motion after finding that the pleadings and accompanying materials established that Sebastian was an employee of non-debtor FZCo, WorldSpace was not an obligor under the employment agreement between FZCo and Sebastian, and therefore Sebastian lacked creditor standing to bring

4

the derivative action. The District Court affirmed and added an alternative ground for affirmance: Sebastian never received permission from the Bankruptcy Court to file his derivative action. This appeal followed.

## II.

The Bankruptcy Court had jurisdiction under 28 U.S.C. § 157. The District Court had jurisdiction under 28 U.S.C. § 158(a)(1) to review the Bankruptcy Court's dismissal order. And we have appellate jurisdiction under 28 U.S.C. § 1291. Our task is to "stand in the shoes" of the District Court and review the Bankruptcy Court's decision anew. *In re Pransky*, 318 F.3d 536, 542 (3d Cir. 2003) (quoting *In re Krystal Cadillac Oldsmobile GMC Truck, Inc.*, 142 F.3d 631, 635 (3d Cir. 1998)). "[W]e review a bankruptcy court's 'legal determinations *de novo*, its factual findings for clear error, and its exercises of discretion for abuse thereof.'" *In re Miller*, 730 F.3d 198, 203 (3d Cir. 2013) (quoting *In re Michael*, 699 F.3d 305, 308 n.2 (3d Cir. 2012)).

## III.

Sebastian must have standing to bring his derivative action. *In re Glob. Indus. Techs., Inc.*, 645 F.3d 201, 211 (3d Cir. 2011). Sebastian's only route to standing is as a creditor of the debtor. *See N. Am. Catholic Educ. Programming Found., Ins. v. Gheewalla*, 930 A.2d 92, 101 (Del. 2007) (permitting creditors to bring certain derivative actions). But for Sebastian to be a creditor, the $170,705.90 owed to him must be owed by the debtor, WorldSpace, not non-debtor FZCo. Sebastian claims that he is a creditor of WorldSpace because it assumed contractual liability to him under the July 1, 2008 letter agreement that governed his employment by FZCo.

5

Maryland law governs Sebastian's claim.[2]  Under Maryland law, the first step in interpreting a contract is to refer to its text, and determine whether it is ambiguous. *Cochran v. Norkunas*, 919 A.2d 700, 709 (Md. 2007).  A text is ambiguous if it is reasonably susceptible to two or more meanings, and the corollary is true as well—a text that is reasonably susceptible to only one meaning is unambiguous.  *Calomiris v. Woods*, 727 A.2d 358, 363 (Md. 1999).  If a text is unambiguous, courts must give effect to the text's plain meaning by focusing on the four corners of the document, extrinsic evidence may not be admitted to prove meaning, and interpretation is a question of law.  *See Cochran*, 919 at 709, 709 n.8 (discussing interpretation of unambiguous contracts); *Calomiris*, 727 at 363-64 (discussing the use of extrinsic evidence).  With an ambiguous contract, by contrast, extrinsic evidence may be admitted to prove the text's meaning, and interpretation is a question of fact.  *City of Bowie v. Mie, Props., Inc.*, 922 A.2d 509, 522-23 (Md. 2007).  Whether a text is ambiguous is itself a question of law.  *Id.* at 524.

Sebastian asserts that the July 1, 2008 letter agreement was unambiguous in making WorldSpace a party to it.  In support of his position, he points to the fact that the letter was signed by Gregory Armstrong on top of a signature block containing Armstrong's title as his WorldSpace's COO, and the letter begins with the statement "I," referring to Armstrong, "reconfirm your employment with [FZCo]."  (App. 150.)  Sebastian also points to the fact that the letter states that Sebastian, "[a]s a key employee"

---

[2] We assume that Maryland law governs because the parties, the Bankruptcy Court, and the District Court all also assumed the same based upon the fact that WorldSpace maintained its principal place of business in Maryland.

was "eligible to participate" in WorldSpace's equity Incentive Award Plan. (*Id.*) Finally, Sebastian argues that the fact that he was to "report to" WorldSpace's COO confirms that WorldSpace was bound by the terms of the July 1, 2008 letter agreement. (*Id.*)

In spite of the contract's references to WorldSpace, we find that the District and Bankruptcy Courts are correct—the contract is unambiguously "with . . . FZCo." That is precisely what the contract's very first sentence says. Sebastian is an employee of FZCo, a fact that is made abundantly clear by the more than 20 references to FZCo in the letter agreement in the context of Sebastian's employment responsibilities. Furthermore, there is no explicit assumption of contractual responsibility assumed by WorldSpace. The July 1, 2008 letter agreement established only the rights, responsibilities and liabilities of Sebastian and FZCo.

Sebastian's signature-block argument does not carry the day because context is key, and there is no hard and fast rule as to the significance of a company officer's signature over his or her title. For example, when courts are asked to decide whether a company president's signature, placed atop his or her title, indicates that the president bound only the company and not himself or herself, there is no one right answer—the contract's entire text determines the outcome, not some special rule about signatures.[3]

---

[3] *Cf. 84 Lumber Co. v. Smith*, 356 S.W.3d 380, 383 (Tenn. 2011) (finding that based on the specific language of the contract, the fact that a lumber-company president signed a loan document over his title did not mean that he had signed only in his official capacity); *Anderson v. Gardner*, 647 P.2d 3, 4 (Utah 1982) (same, but with respect to a radio-station general manager).

Thus, the signature block alone does not sway us from taking the contract's crystal-clear opening sentence literally.

The same goes with the fact that the contract had Sebastian reporting to WorldSpace's COO, and gave Sebastian eligibility for WorldSpace's Award Incentive Plan. It is not uncommon or impermissible for an employee of a subsidiary to report to an officer of the parent corporation. *See, e.g.*, *Craig v. Lake Asbestos of Quebec, Ltd.*, 843 F.2d 145, 151-52 (3d Cir. 1988) (holding that a subsidiary was not controlled by the parent even though the subsidiary's chairman reported to the parent). And the fact that Sebastian may have received benefits from the parent, on its own, is insufficient to "outweigh" other "significant factors . . . which weigh heavily" in the other direction— factors like the explicit opening sentence in Sebastian's contract and the more than 20 references to FZCo as Sebastian's employer. *In re Enterprise Rent-A-Car Wage & Hour Emp't Practices Litig.*, 683 F.3d 462, 470-71 (3d Cir. 2012) (quoting *Moreau v. Air France*, 356 F.3d 942, 952 (9th Cir. 2004)) (holding that a parent's direction of its subsidiaries' benefits programs is insufficient to support a finding that the parent was a joint-employer). The clarity of the contract's first sentence along with the entire context of the letter agreement compel a holding that WorldSpace did not assume contractual responsibility for Sebastian's employment, and Sebastian is not a creditor of WorldSpace.[4]

---

[4] Because we will affirm on the basis that the Bankruptcy Court's holding was correct with respect to Sebastian's lack of creditor standing, we need not address the District Court's alternative ground for affirmance, that Sebastian's claim also fails for failure to seek permission to file his action.

**IV.**

In sum, Sebastian's employment was with FZCo, and FZCo is the entity against whom Sebastian's $170,705.90 claim is properly lodged, not WorldSpace. Sebastian is therefore without creditor standing to bring his derivative action against WorldSpace, as the Bankruptcy Court and the District Court correctly held. We will affirm.