**In the Matter of Daniel L. LYBROOK and Linda Lou Lybrook, Debtors–Appellants.**

No. 90–2926.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 15, 1991.

Decided Dec. 18, 1991.

Margaret G. Robb, Bartlett, Robb & Sabol, Cynthia L. Garwood, Cooke, Bache, Laszynski & Moore, Lafayette, Ind., for Margret G. Robb.

David A. Rosenthal, Lafayette, Ind., for Daniel L. Lybrook and Linda Lou Lybrook.

Before BAUER, Chief Judge, and POSNER and FLAUM, Circuit Judges.

POSNER, Circuit Judge.

Does property that a bankrupt acquires while he is in Chapter 13 remain in the bankrupt estate if he later converts the bankruptcy to Chapter 7 (the usual fate of a Chapter 13 filing) even if it would not have been part of the Chapter 7 estate had he proceeded under that chapter from the start? Chapter 13, which is to personal bankruptcy as Chapter 11 (reorganization) is to corporate bankruptcy, *In re Schaitz,* 913 F.2d 452 (7th Cir.1990); 5 *Collier on Bankruptcy* ¶¶ 1300.01–.02 (Lawrence P. King ed. 15th ed. 1991), allows the bankrupt to keep all his assets if the unsecured claims against him do not exceed $100,000 and the bankruptcy court confirms a plan for the payment of the creditors over time. 11 U.S.C. §§ 109, 1322, 1325. The bankrupt can convert his Chapter 13 bankruptcy to Chapter 7 at will. 11 U.S.C. § 1307(a).

The Lybrooks, who operate a modest farm in Indiana, filed a Chapter 13 petition in March 1986. One of their creditors objected on the ground that the Lybrooks' unsecured debts exceeded $100,000. That issue was never resolved. The Lybrooks had a bad farming year and could not work

out a plan with their creditors. In June 1987 the Lybrooks converted to Chapter 7 and a trustee was appointed.

■ In January of that year Mr. Lybrook had inherited $70,000 worth of farm land from his father under a will made after the petition for bankruptcy had been filed. (The father's previous will had left no property to the son.) In December 1987 the trustee sought an order directing the Lybrooks to turn over the inherited property. The bankruptcy judge obliged, 107 B.R. 611, and the district judge affirmed. 135 B.R. 321. The order is final for purposes of appeal to this court under 28 U.S.C. § 158(d) because it resolved a freestanding dispute of the sort that, outside of bankruptcy, would be an independent lawsuit. *In re Szekely*, 936 F.2d 897, 899–900 (7th Cir.1991).

■ If Lybrook *père* had died within 180 days of the filing of the original bankruptcy petition, the bequest would have been includable in the bankrupt estate even if the petition had been filed under Chapter 7. 11 U.S.C. § 541(a)(5)(A). But as he died more than 180 days after the filing, it would not have been includable had he filed under that chapter. The Chapter 13 estate, however, is larger than the Chapter 7 estate. It includes "all property of the kind specified in [section 541] that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted." 11 U.S.C. § 1306(a)(1). There is no 180–day limitation. The bequest was property "of the kind specified" in section 541, so it went into the Chapter 13 estate in January 1987. The question is whether it continued into the Chapter 7 estate when the Lybrooks converted the bankruptcy proceeding to that chapter several months later.

In arguing that it did not, the Lybrooks place great weight on section 348(a) of the Bankruptcy Code, which provides that conversion of a case from one chapter to another "does not effect a change in the date of the filing of the petition, [or] the commencement of the case." If the Chapter 7 proceeding should therefore be deemed to have begun on the day the Chapter 13 proceeding was filed, then, given that the

Chapter 7 estate is limited (roughly speaking—for remember the 180–day provision) to property belonging to the debtor on the date of filing, 11 U.S.C. § 541, and Lybrook hadn't yet received his bequest then, the bequest is not part of the bankrupt estate. That is a possible reading, but an equally good alternative from a purely semantic perspective is that conversion from Chapter 13 to Chapter 7 does not affect the bankrupt estate but merely assures the continuity of the case for purposes of filing fees, preferences, statutes of limitations, and so forth.

Given this semantic impasse the Lybrooks switch to policy and argue that Congress's desire to encourage debtors to use Chapter 13 in lieu of Chapter 7 would be undermined if they could not withdraw after-acquired property. The legislative history does reveal that, in liberalizing the old Chapter XIII, the framers of the new (1978) Chapter 13 wanted to encourage repayment plans as an alternative to straight bankruptcy. H.R.Rep. No. 595, 95th Cong., 2d Sess. 116–19 (1978), U.S.Code Cong. & Admin.News 1978, 5787, 6076–6080. But it is not clear that the Lybrooks' position would on balance encourage rather than discourage this alternative. Their position makes an *initial* filing under Chapter 13 less risky, all right, but it also encourages conversions from Chapter 13 to Chapter 7. In the end, as many or more personal bankruptcies may end up in Chapter 7 as would be the case if property once it was included in the Chapter 13 estate remained in the bankrupt estate following conversion.

We are more impressed by the bankruptcy judge's observation that a rule of once in, always in is necessary to discourage strategic, opportunistic behavior that hurts creditors without advancing any legitimate interest of debtors. A debtor who lacks confidence that he can actually work his way out of his financial hole by payments under a Chapter 13 plan will nevertheless have an incentive to proceed under that chapter for as long as he can, holding his creditors at bay and thus staving off the evil day when they seize his assets. For he knows that if his position deteriorates fur-

ther it is the creditors who will bear the loss, while if he should get lucky and win a lottery or a legal judgment, or inherit money (after 180 days have passed since the filing of the petition), he will be able to keep his windfall by the simple expedient of converting to Chapter 7—and remember that the debtor can convert to that chapter from Chapter 13 at will. On the Lybrooks' interpretation, Chapter 13 shifts all downside risk to the creditors and all upside potential to the debtor.

We acknowledge that not all bankrupts are as calculating as this analysis assumes. An ambitious empirical study found that economic variables explained only a small part of the choice by debtors whether to file under Chapter 7 or Chapter 13. Teresa A. Sullivan, Elizabeth Warren & Jay Lawrence Westbrook, "Laws, Models, and Real People: Choice of Chapter in Personal Bankruptcy," 13 *Law & Social Inquiry* 661, 686 (1988). The significance of this finding, however, can be questioned. The data are for 1981, *id.* at 664, only three years after the enactment of Chapter 13, and a new statute can entail a substantial learning period. And small is not zero. The Lybrooks themselves are sensitive to the potential incentive effects of their position and suggest offsetting factors. In particular they point to section 707(b) of the Code, which authorizes the bankruptcy judge to dismiss a Chapter 7 bankruptcy proceeding, and thereby preclude the discharge of the debtor's debts, for "substantial abuse" of the chapter. We may assume that if by virtue of inheritance or otherwise a Chapter 7 debtor became capable of paying off all his debts in a Chapter 13 proceeding, the Chapter 7 proceeding could be dismissed for substantial abuse. *In re Kelly*, 841 F.2d 908, 914–15 (9th Cir.1988). How this argument would help the Lybrooks puzzles us, but in any event section 707(b) is limited by its terms to cases in which the debtors' "debts are primarily consumer debts," see *In re Booth*, 858 F.2d 1051 (5th Cir.1988), which they are not in this case. And the likeliest sequel if discharge is denied is another suit by creditors.

The Lybrooks argue alternatively that any payment the debtor makes while he is in possession of the bankrupt estate should be treated as an unlawful preference if at the time of conversion the estate is smaller than it was when the original petition was filed. But this would defeat Chapter 13 by making it impossible for the debtor to carry on his business; he could not pay his current creditors. The truth is that the Lybrooks have no feasible suggestions for curing the problem of opportunistic behavior that the bankruptcy judge has identified. The only cure is to rule that the Chapter 13 estate passes unaltered into Chapter 7 upon conversion. The Third Circuit has said in dictum that this continuity rule discourages resort to Chapter 13, *In re Bobroff*, 766 F.2d 797 (3d Cir.1985), but for the reasons stated earlier we respectfully disagree with this suggestion. Two decisions by the Eighth Circuit support our position. *Resendez v. Lindquist*, 691 F.2d 397 (8th Cir.1982); *Armstrong v. Lindberg*, 735 F.2d 1087, 1090 (8th Cir.1984).

The Lybrooks have another string to their bow. They argue that in fact they had unsecured claims in excess of $100,000 when they filed under Chapter 13, so the bankruptcy judge never acquired jurisdiction, the inheritance never became a part of the Chapter 13 bankrupt estate (there was no such estate), and their Chapter 7 filing was a new filing, not a conversion. How the argument can help them is obscure to us, because on the date of conversion (=new filing on this view) the bequest had been received and would therefore have been a part of the bankrupt estate if the Chapter 7 proceeding were thought to have begun then rather than to relate back to the Chapter 13 filing. They try to get around this problem by asking us to treat the (on their view) void Chapter 13 filing as if it had been a valid Chapter 7 filing, but do not explain why they should thus be permitted to gain an advantage from having either fraudulently or at least mistakenly (by their own argument) attempted to invoke Chapter 13. And notice how the jurisdictional argument undermines the Lybrooks' suggestion that the concept of substantial abuse provides the antidote to the opportunistic incentives that their interpretation of section 348(a) creates. For if

accepted the argument would remove an important, though not necessarily an essential, *In re Krohn,* 886 F.2d 123, 127 (6th Cir.1989), ground for dismissing a Chapter 7 proceeding for substantial abuse: that the debtor could have paid his debts in a Chapter 13 proceeding. The Lybrooks are arguing they couldn't because they are not eligible for Chapter 13.

We needn't get deeper into this tangle. Jurisdiction is determined by good-faith allegations rather than by what the evidence eventually shows. *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 288–90, 58 S.Ct. 586, 590–91, 82 L.Ed. 845 (1938). Otherwise every diversity case in which the plaintiff failed to obtain a judgment for at least $50,000 would be dismissed for lack of jurisdiction. The Lybrooks do not (quite) accuse themselves of having fraudulently invoked Chapter 13, and we shall assume therefore that, unlike the debtor in *In re Koehler,* 62 B.R. 70 (Bankr.D.Neb.1986), they were proceeding in good faith. This scotches any possible jurisdictional issue. *In re Pearson,* 773 F.2d 751, 757–58 (6th Cir.1985). There was a Chapter 13 estate, it included the inheritance, and it continued intact into Chapter 7 upon conversion.

AFFIRMED.