UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT

 

No. 95-1369

 IN RE: DERALD E. YOUNG AND MARY P. YOUNG,

 Debtors.

 

 DERALD E. YOUNG AND MARY P. YOUNG,

 Appellants,

 v.

 KEY BANK OF MAINE, ET AL.,

 Appellees.

 

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MAINE

 [Hon. Gene Carter, U.S. District Judge] 

 

 Before

 Selya and Boudin, Circuit Judges, 

 and Saris,* District Judge. 

 

 Ralph W. Brown for appellants. 
 Jana S. Stabile, with whom Michael S. Haenn was on brief, 
for appellees.

 

 September 29, 1995

 
 
*Of the District of Massachusetts, sitting by designation.

 SELYA, Circuit Judge. This appeal raises an issue SELYA, Circuit Judge. 

which, but for its effect on the parties before us, might well

deserve a place among the inhabitants of Madame Tussauds's

Waxworks. The tale follows.

 We begin with basic bankruptcy bromides. Chapter 13 of

the Bankruptcy Code, 11 U.S.C. 1301-1330, enables individual

debtors to reorganize their financial affairs, so to speak, by

extending due dates and servicing their debts out of future

income pursuant to a payment plan crafted under the supervision

of the bankruptcy court. In contrast, Chapter 7 of the Code, 11

U.S.C. 701-766, provides for what is commonly termed "straight

bankruptcy." It contemplates the liquidation of a debtor's

estate, the distribution of available assets to his or her

creditors, and ultimate relief from liability for all

dischargeable debts. Because the two chapters mark a natural

progression from difficult financial straits to unpassable

financial straits, a proceeding under Chapter 13 may be converted

into a proceeding under Chapter 7 if the reorganization of the

debtor's affairs founders. See 11 U.S.C. 1307. 

 When such a conversion occurs, the Chapter 7 proceeding

"relates back" in the sense that the Chapter 7 petition is deemed

to have been filed on the filing date of the original Chapter 13

petition. See 11 U.S.C. 348(a). An enigma arises, however, 

where a debtor has earned income during the pendency of the

Chapter 13 petition, because the statutory mosaic makes clear

that a Chapter 13 estate includes post-petition earnings, see 11 

 2

U.S.C. 1306(a)(2), and a Chapter 7 estate does not, see 11 

U.S.C. 541(a). Therein lies the rub. For many years, courts

could not agree on an answer to the question of whether post-

petition income paid to a Chapter 13 trustee became property of

the Chapter 7 estate on conversion of an insolvency proceeding

from a workout to a straight bankruptcy, even though such income

would not be property of the estate had the debtor initially

filed his or her petition under Chapter 7. In this case the

lower courts ruled that such post-petition income inures to the

benefit of the Chapter 7 trustee. This appeal ensued.

 The material facts are undisputed. The debtors, Derald

and Mary Young, owned and operated a conglomeration of business

enterprises including Damn Yankee Gifts, Damn Yankee Balloons,

Damn Yankee Pewter, and Damn Yankee Sheepskin. On October 22,

1992, the Youngs petitioned for relief from their creditors under

Chapter 13. A payment plan emerged. The bankruptcy court

approved it, and the debtors agreed to abide by it.

 While attempting to satisfy the terms of the plan, Mr.

and Mrs. Young tendered a total of $24,498 in interim earnings to

the Chapter 13 trustee. But, to paraphrase the Scottish poet,

the best-laid plans of creditors and debtors often go awry. Cf. 

Robert Burns, To a Mouse (1785). The payment plan collapsed when 

the Youngs found themselves unable to sell off certain assets. 

Key Bank of Maine, a secured creditor, took steps to protect its

interests and, over the debtors' objection, forced a conversion

of the Chapter 13 proceeding into a straight bankruptcy under

 3

Chapter 7.

 The Youngs subsequently moved to determine the property

of the Chapter 7 estate in order to settle the status of their

post-petition contribution. Initially, the bankruptcy court

accepted the debtors' position and held that the funds were the

property of the Chapter 13 trustee. On reconsideration, the

court revoked its earlier order and decided, favorably to Key

Bank, that the funds were the property of the Chapter 7 estate.

On July 20, 1994, the bankruptcy judge entered a new order to

that effect. The debtors appealed to the district court, which

upheld the July 20 order. We now reverse.

 At the time the events leading to this conundrum

occurred, the authorities were divided. Many courts held, as did

the courts below, that post-petition earnings comprised part of

the Chapter 7 estate when a Chapter 13 proceeding was converted

to a straight bankruptcy. See, e.g., In re Calder, 973 F.2d 862, 

866 (10th Cir. 1992); In re Lybrook, 951 F.2d 136, 137 (7th Cir. 

1991); In re Tracy, 28 B.R. 189, 190 (Bankr. D.Me. 1983). Other 

courts espoused the opposite view. See, e.g., In re Bobroff, 766 

F.2d 797, 803 (3d Cir. 1985); In re Borrero, 75 B.R. 141, 142 

(Bankr. D.P.R. 1987); In re Peters, 44 B.R. 68, 70-72 (Bankr. 

M.D.Tenn. 1984).1 The division in the authorities is
  

 1In yet a third variation on the theme, a few courts held
that if post-petition earnings were accumulated before the
confirmation of a Chapter 13 payment plan, such funds did not
become property of the Chapter 7 estate upon conversion; but if
the funds were earned subsequent to the confirmation of a plan,
they would then become property of the Chapter 7 estate upon
conversion. See, e.g., In re Schmeltz, 114 B.R. 607, 610-13 

 4

understandable. The question is excruciatingly close, respected

jurists disagree as to how it can best be answered, and as Judge

Posner acknowledged, the arguments on either side of the line

offer "equally good alternative[s]." Lybrook, 951 F.2d at 137. 

Thus, for all intents and purposes the law was indeterminate when

this question came before the courts below, and those courts

resolved the indeterminacy in a plausible way.

 Nevertheless, judges sometimes view issues quite

differently, and our responsibility to the parties before us

requires that, on a matter of law committed to our plenary

review, see In re G.S.F. Corp., 938 F.2d 1467, 1474 (1st Cir. 

1991), we must interpret the applicable statutes as we read them,

consistent with our exposition of discerned congressional intent

and without paying special deference to the courts below.

Fulfilling our proper function here, we reach a conclusion

contrary to that reached by the bankruptcy judge and the district

judge. Consequently, we hold that post-petition income earned by

and contributed to a Chapter 13 estate (prior to the change in

the law discussed infra) did not, upon the conversion of the 

proceeding to a straight bankruptcy, become property of the

Chapter 7 estate.

 At this point, the plot thickens. Ordinarily, we would

now proceed to present an analysis of the bases for our decision,

explicating our reasoning in suitable detail. But the
  

(Bankr. N.D.Ind. 1990); In re Holly, 109 B.R. 524, 526 (Bankr. 
S.D.Ga. 1989); In re Richardson, 20 B.R. 490, 492 (Bankr. 
W.D.N.Y. 1982).

 5

circumstances of this case are well out of the ordinary, and they

counsel a different, more muted course. We explain briefly.

 Perhaps because of the split in authority about how

best to synchronize Chapter 13 and Chapter 7, Congress acted

within the past year to demystify the situation. The Bankruptcy

Reform Act of 1994 answered the very question that confronts us.

It essentially codified the Bobroff rule, enacting a statutory 

provision designed to ensure that, on conversion from a Chapter

13 proceeding,

 property of the estate in the converted case
 shall consist of property of the estate, as
 of the date of filing of the petition, that
 remains in the possession of or is under the
 control of the debtor on the date of
 conversion.

11 U.S.C. 348(f)(1)(A) (1994). In all future cases, this rule

(subject to a statutory "bad faith" exception not of concern

here) will govern. But the newly crafted statute does not apply

in this case: the Bankruptcy Reform Act explicitly bars

retroactive application of the statutory solution to accruals

antedating the Act's effective date (October 22, 1994). See Pub. 

L. No. 103-394, 702, 108 Stat. 4106, 4150. The Youngs filed

their Chapter 13 petition exactly two years earlier, and the

Chapter 13 trustee had the disputed funds in hand well before the

amendment's effective date. As a result, section 348(f) is not

controlling in this case.

 Be that as it may, it ill behooves us to play the

ostrich, struthiously pretending that the neoteric statute is not

now in force. Though the amendment does not affect the outcome

 6

of this appeal, it punctuates our opinion and strips it of

virtually all precedential value. Where, as here, we face a

lingering question of law that is defunct except as to a handful

of ongoing cases, we see no point in writing at length either to

elucidate our rationale or to justify our construction of an

ambiguous statute that Congress has lately taken pains to

clarify. Cf. In re San Juan Dupont Plaza Hotel Fire Litig., 989 

F.2d 36, 38 (1st Cir. 1993) (suggesting that an appellate court

should not write opinions "simply to hear its own words

resonate"). This is especially true in the instant case, since

other courts have spelled out the reasons supporting our

conclusion. See Bobroff, 766 F.2d at 803; Peters, 44 B.R. at 70- 

72. Given this peculiar concatenation of circumstances, we are

confident that going further would merely add another floor to

the Tower of Babel.

 The judgment of the district court is reversed, and the The judgment of the district court is reversed, and the 

cause is remanded to the district court with instructions to cause is remanded to the district court with instructions to 

vacate the order of the bankruptcy court and to remit the case vacate the order of the bankruptcy court and to remit the case 

for the entry of a decree consistent herewith. All parties will for the entry of a decree consistent herewith. All parties will 

bear their own costs. bear their own costs. 

 7