USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT _________________________ No. 95-1369 IN RE: DERALD E. YOUNG AND MARY P. YOUNG, Debtors. _________________________ DERALD E. YOUNG AND MARY P. YOUNG, Appellants, v. KEY BANK OF MAINE, ET AL., Appellees. _________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE [Hon. Gene Carter, U.S. District Judge] ___________________ _________________________ Before Selya and Boudin, Circuit Judges, ______________ and Saris,* District Judge. ______________ _______________________ Ralph W. Brown for appellants. ______________ Jana S. Stabile, with whom Michael S. Haenn was on brief, ________________ ________________ for appellees. _________________________ September 29, 1995 _________________________ _____________ *Of the District of Massachusetts, sitting by designation. SELYA, Circuit Judge. This appeal raises an issue SELYA, Circuit Judge. _____________ which, but for its effect on the parties before us, might well deserve a place among the inhabitants of Madame Tussauds's Waxworks. The tale follows. We begin with basic bankruptcy bromides. Chapter 13 of the Bankruptcy Code, 11 U.S.C. 1301-1330, enables individual debtors to reorganize their financial affairs, so to speak, by extending due dates and servicing their debts out of future income pursuant to a payment plan crafted under the supervision of the bankruptcy court. In contrast, Chapter 7 of the Code, 11 U.S.C. 701-766, provides for what is commonly termed "straight bankruptcy." It contemplates the liquidation of a debtor's estate, the distribution of available assets to his or her creditors, and ultimate relief from liability for all dischargeable debts. Because the two chapters mark a natural progression from difficult financial straits to unpassable financial straits, a proceeding under Chapter 13 may be converted into a proceeding under Chapter 7 if the reorganization of the debtor's affairs founders. See 11 U.S.C. 1307. ___ When such a conversion occurs, the Chapter 7 proceeding "relates back" in the sense that the Chapter 7 petition is deemed to have been filed on the filing date of the original Chapter 13 petition. See 11 U.S.C. 348(a). An enigma arises, however, ___ where a debtor has earned income during the pendency of the Chapter 13 petition, because the statutory mosaic makes clear that a Chapter 13 estate includes post-petition earnings, see 11 ___ 2 U.S.C. 1306(a)(2), and a Chapter 7 estate does not, see 11 ___ U.S.C. 541(a). Therein lies the rub. For many years, courts could not agree on an answer to the question of whether post- petition income paid to a Chapter 13 trustee became property of the Chapter 7 estate on conversion of an insolvency proceeding from a workout to a straight bankruptcy, even though such income would not be property of the estate had the debtor initially filed his or her petition under Chapter 7. In this case the lower courts ruled that such post-petition income inures to the benefit of the Chapter 7 trustee. This appeal ensued. The material facts are undisputed. The debtors, Derald and Mary Young, owned and operated a conglomeration of business enterprises including Damn Yankee Gifts, Damn Yankee Balloons, Damn Yankee Pewter, and Damn Yankee Sheepskin. On October 22, 1992, the Youngs petitioned for relief from their creditors under Chapter 13. A payment plan emerged. The bankruptcy court approved it, and the debtors agreed to abide by it. While attempting to satisfy the terms of the plan, Mr. and Mrs. Young tendered a total of $24,498 in interim earnings to the Chapter 13 trustee. But, to paraphrase the Scottish poet, the best-laid plans of creditors and debtors often go awry. Cf. ___ Robert Burns, To a Mouse (1785). The payment plan collapsed when __________ the Youngs found themselves unable to sell off certain assets.  Key Bank of Maine, a secured creditor, took steps to protect its interests and, over the debtors' objection, forced a conversion of the Chapter 13 proceeding into a straight bankruptcy under 3 Chapter 7. The Youngs subsequently moved to determine the property of the Chapter 7 estate in order to settle the status of their post-petition contribution. Initially, the bankruptcy court accepted the debtors' position and held that the funds were the property of the Chapter 13 trustee. On reconsideration, the court revoked its earlier order and decided, favorably to Key Bank, that the funds were the property of the Chapter 7 estate. On July 20, 1994, the bankruptcy judge entered a new order to that effect. The debtors appealed to the district court, which upheld the July 20 order. We now reverse. At the time the events leading to this conundrum occurred, the authorities were divided. Many courts held, as did the courts below, that post-petition earnings comprised part of the Chapter 7 estate when a Chapter 13 proceeding was converted to a straight bankruptcy. See, e.g., In re Calder, 973 F.2d 862, ___ ____ ____________ 866 (10th Cir. 1992); In re Lybrook, 951 F.2d 136, 137 (7th Cir. _____________ 1991); In re Tracy, 28 B.R. 189, 190 (Bankr. D.Me. 1983). Other ___________ courts espoused the opposite view. See, e.g., In re Bobroff, 766 ___ ____ _____________ F.2d 797, 803 (3d Cir. 1985); In re Borrero, 75 B.R. 141, 142 ______________ (Bankr. D.P.R. 1987); In re Peters, 44 B.R. 68, 70-72 (Bankr. _____________ M.D.Tenn. 1984).1 The division in the authorities is  ____________________ 1In yet a third variation on the theme, a few courts held that if post-petition earnings were accumulated before the confirmation of a Chapter 13 payment plan, such funds did not become property of the Chapter 7 estate upon conversion; but if the funds were earned subsequent to the confirmation of a plan, they would then become property of the Chapter 7 estate upon conversion. See, e.g., In re Schmeltz, 114 B.R. 607, 610-13 ___ ____ _______________ 4 understandable. The question is excruciatingly close, respected jurists disagree as to how it can best be answered, and as Judge Posner acknowledged, the arguments on either side of the line offer "equally good alternative[s]." Lybrook, 951 F.2d at 137. _______ Thus, for all intents and purposes the law was indeterminate when this question came before the courts below, and those courts resolved the indeterminacy in a plausible way. Nevertheless, judges sometimes view issues quite differently, and our responsibility to the parties before us requires that, on a matter of law committed to our plenary review, see In re G.S.F. Corp., 938 F.2d 1467, 1474 (1st Cir. ___ ___________________ 1991), we must interpret the applicable statutes as we read them, consistent with our exposition of discerned congressional intent and without paying special deference to the courts below. Fulfilling our proper function here, we reach a conclusion contrary to that reached by the bankruptcy judge and the district judge. Consequently, we hold that post-petition income earned by and contributed to a Chapter 13 estate (prior to the change in the law discussed infra) did not, upon the conversion of the _____ proceeding to a straight bankruptcy, become property of the Chapter 7 estate. At this point, the plot thickens. Ordinarily, we would now proceed to present an analysis of the bases for our decision, explicating our reasoning in suitable detail. But the  ____________________ (Bankr. N.D.Ind. 1990); In re Holly, 109 B.R. 524, 526 (Bankr. ____________ S.D.Ga. 1989); In re Richardson, 20 B.R. 490, 492 (Bankr. __________________ W.D.N.Y. 1982). 5 circumstances of this case are well out of the ordinary, and they counsel a different, more muted course. We explain briefly. Perhaps because of the split in authority about how best to synchronize Chapter 13 and Chapter 7, Congress acted within the past year to demystify the situation. The Bankruptcy Reform Act of 1994 answered the very question that confronts us. It essentially codified the Bobroff rule, enacting a statutory _______ provision designed to ensure that, on conversion from a Chapter 13 proceeding, property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion. 11 U.S.C. 348(f)(1)(A) (1994). In all future cases, this rule (subject to a statutory "bad faith" exception not of concern here) will govern. But the newly crafted statute does not apply in this case: the Bankruptcy Reform Act explicitly bars retroactive application of the statutory solution to accruals antedating the Act's effective date (October 22, 1994). See Pub. ___ L. No. 103-394, 702, 108 Stat. 4106, 4150. The Youngs filed their Chapter 13 petition exactly two years earlier, and the Chapter 13 trustee had the disputed funds in hand well before the amendment's effective date. As a result, section 348(f) is not controlling in this case. Be that as it may, it ill behooves us to play the ostrich, struthiously pretending that the neoteric statute is not now in force. Though the amendment does not affect the outcome 6 of this appeal, it punctuates our opinion and strips it of virtually all precedential value. Where, as here, we face a lingering question of law that is defunct except as to a handful of ongoing cases, we see no point in writing at length either to elucidate our rationale or to justify our construction of an ambiguous statute that Congress has lately taken pains to clarify. Cf. In re San Juan Dupont Plaza Hotel Fire Litig., 989 ___ ______________________________________________ F.2d 36, 38 (1st Cir. 1993) (suggesting that an appellate court should not write opinions "simply to hear its own words resonate"). This is especially true in the instant case, since other courts have spelled out the reasons supporting our conclusion. See Bobroff, 766 F.2d at 803; Peters, 44 B.R. at 70- ___ _______ ______ 72. Given this peculiar concatenation of circumstances, we are confident that going further would merely add another floor to the Tower of Babel. The judgment of the district court is reversed, and the The judgment of the district court is reversed, and the _______________________________________________________ cause is remanded to the district court with instructions to cause is remanded to the district court with instructions to _________________________________________________________________ vacate the order of the bankruptcy court and to remit the case vacate the order of the bankruptcy court and to remit the case _________________________________________________________________ for the entry of a decree consistent herewith. All parties will for the entry of a decree consistent herewith. All parties will _________________________________________________________________ bear their own costs. bear their own costs. ____________________ 7