# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
July 7, 2014

Lyle W. Cayce
Clerk

No. 13-50374

In the Matter of:  CHARLES E. HARRIS, III,

                              Debtor

MARY K. VIEGELAHN, Chapter 13 Trustee,

                              Appellant

v.

CHARLES E. HARRIS, III,

                              Appellee

Appeal from the United States District Court
for the Western District of Texas

Before BENAVIDES, CLEMENT, and GRAVES, Circuit Judges.

JAMES E. GRAVES, JR., Circuit Judge:

Charles Harris filed a bankruptcy petition under Chapter 13, made regular payments from his wages to the trustee under a confirmed Chapter 13 plan, and eventually converted his case to Chapter 7.  The district court held that payment funds in the possession of the Chapter 13 trustee that had not been distributed to creditors at the time of conversion must be returned to Harris.  This appeal filed by the trustee presents a single question of law: should the undistributed payments held by the Chapter 13 trustee at the time

No. 13-50374

of conversion be returned to the debtor or distributed to creditors pursuant to the Chapter 13 plan? This question has divided courts for thirty years,[1] although only one appellate court has squarely answered it.[2] For the reasons explained below, we hold that the payments must be distributed to creditors. Accordingly, we REVERSE the district court's order and REMAND the case to the district court.

## BACKGROUND

In February 2010, Charles E. Harris, III, filed a petition for relief under Chapter 13 of the Bankruptcy Code. At the time of filing, he was $3,700 behind

---

[1] Opinions holding that the funds should be distributed to creditors include *In re Pegues*, 266 B.R. 328 (Bankr. D. Md. 2001); *In re Bell*, 248 B.R. 236 (Bankr. W.D.N.Y. 2000); *In re Hardin*, 200 B.R. 312 (Bankr. E.D. Ky. 1996); *In re O'Quinn*, 143 B.R. 408 (Bankr. S.D. Miss. 1992); *In re Galloway*, 134 B.R. 602 (Bankr. W.D. Ky. 1991); *In re Halpenny*, 125 B.R. 814 (Bankr. D. Haw. 1991); *In re Milledge*, 94 B.R. 218 (Bankr. M.D. Ga. 1988); *Matter of Burns*, 90 B.R. 301 (Bankr. S.D. Ohio 1988); *In re Waugh*, 82 B.R. 394 (Bankr. W.D. Pa. 1988); *In re Redick*, 81 B.R. 881 (Bankr. E.D. Mich. 1987); *In re Rutenbeck*, 78 B.R. 912 (Bankr. E.D. Wis. 1987); and *In re Lennon*, 65 B.R. 130 (Bankr. N.D. Ga. 1986) (dicta).

Opinions holding that the funds should be returned to the debtor include *In re Michael*, 436 B.R. 323 (Bankr. M.D. Pa. 2010) ("*Michael I*"); *In re Boggs*, 137 B.R. 408 (Bankr. W.D. Wash. 1992); *In re de Vos*, 76 B.R. 157 (N.D. Cal. 1987); *In re Luna*, 73 B.R. 999 (N.D. Ill. 1987); *In re Peters*, 44 B.R. 68 (Bankr. M.D. Tenn. 1984); *In re Bullock*, 41 B.R. 637 (Bankr. E.D. Pa. 1984); *In re McFadden*, 37 B.R. 520 (Bankr. M.D. Pa. 1984); and *In re Hannan*, 24 B.R. 691 (Bankr. E.D.N.Y. 1982). However, many of the earlier opinions in the latter category, after determining that the funds do not become part of the new Chapter 7 estate, did not go on to consider whether creditors may nonetheless be entitled to them under the old Chapter 13 plan.

[2] *In re Michael*, 699 F.3d 305 (3rd Cir. 2012) ("*Michael II*") (holding that the undistributed funds must be returned to the debtor). Other circuits have addressed similar questions. *See, e.g.*, *In re Stamm*, 222 F.3d 216 (5th Cir. 2000) (holding that when a Chapter 13 case is converted to Chapter 7 *before confirmation of a plan*, wages paid by the debtor to the trustee under the proposed plan do not become part of the Chapter 7 estate and must be returned to the debtor); *In re Young*, 66 F.3d 376 (1st Cir. 1995) (holding that earnings paid to a Chapter 13 trustee pursuant to a confirmed plan do not become part of the Chapter 7 estate upon conversion, without analyzing what should be done with these funds); *In re Nash*, 765 F.2d 1410 (9th Cir. 1985) (holding that any undistributed earnings paid to a Chapter 13 trustee pursuant to a confirmed plan must be returned to the debtor upon *dismissal* of the Chapter 13 case).

2

No. 13-50374

on his home mortgage loan, which was held by Chase. His proposed Chapter 13 plan was confirmed in April 2010. The plan called for Harris to make monthly payments of $530 to the trustee, Mary K. Viegelahn, out of his gross monthly income of $4,082.87, for 60 months. From each payment, $352 was to go to Chase to pay off the arrears on his mortgage and approximately $75 was to go to Conns, the only other secured creditor, to repay a $900 debt on a television. After these debts and the debts to Harris' lawyer were paid off, the payments would go to Harris' unsecured creditors, who had claims against him for $20,458. The plan also called for Harris to make monthly mortgage payments of $960 directly to Chase.

In October 2010, Chase moved to lift the automatic stay with respect to Harris' home, stating that Harris had failed to make mortgage payments as required by the plan. The stay was lifted in November 2010. Harris then moved out of his house, and it was presumably foreclosed upon. Harris kept making monthly payments of $530 to Viegelahn for approximately a year before converting to Chapter 7 and did not attempt to modify the plan. However, after the automatic stay was lifted, Viegelahn placed a hold on the portion of the monthly payments intended to go to Chase. As a result, the funds in Viegelahn's possession began to accumulate.

Harris voluntarily converted his bankruptcy case to Chapter 7 on November 22, 2011. At that time, $5,519.22 remained in Viegelahn's possession. Attached to Harris' notice of conversion was an assignment of funds assigning $1,200 of the remaining funds to Harris' counsel in payment for legal fees. Viegelahn paid $1,200 to Harris' counsel on November 22, 2011. On December 1, 2011, Viegelahn distributed the remaining $4,319.22 as follows: $397.68 to Conns; $3,583.78 to six unsecured creditors; and $267.79 to herself as commission. Finally, on December 5, 2011, Viegelahn filed the final report and account for the Chapter 13 case.

No. 13-50374

Harris moved to compel the return of the $4,319.22 that Viegelahn had distributed to his creditors, arguing that she had no authority to disburse funds after conversion of the case. After a hearing, the bankruptcy court issued an order compelling the return of the funds. Viegelahn appealed to the district court, and the district court affirmed the bankruptcy court's order. Viegelahn now appeals to this court.

## DISCUSSION

### I. Conversion From Chapter 13 to Chapter 7

The filing of a Chapter 7 petition creates an estate that comprises, with certain exceptions, all of the debtor's property at the time of filing. 11 U.S.C. § 541. Property acquired after the date of filing is generally not included in the estate. *See* 11 U.S.C. § 541(a). The estate is then liquidated to pay creditors and any remaining debt is, with certain exceptions, discharged. On the other hand, a Chapter 13 filing proposes a plan to pay creditors with future income rather than liquidation of existing assets. *See* 11 U.S.C. § 1322. Accordingly, the Chapter 13 estate includes, in addition to property held at the time of filing, any property or earnings acquired after filing but before the case is closed, dismissed, or converted. 11 U.S.C. § 1306(a).

A debtor who is unwilling or unable to continue paying creditors under a Chapter 13 plan may convert his case to a Chapter 7 liquidation at any time. 11 U.S.C. § 1307(a). Because of the differences between a Chapter 13 estate and a Chapter 7 estate, such a conversion raises an inevitable question: does the Chapter 7 estate include all property held by the debtor at the time of conversion, or does it include only the property held at the time of the original Chapter 13 filing? Before 1994, there was a circuit split on this question.

In *In re Bobroff*, 766 F.2d 797, 803 (3rd Cir. 1985), the Third Circuit held that a tort action that had accrued while a debtor was proceeding under Chapter 13 would not become part of the estate upon conversion to Chapter 7.

4

No. 13-50374

The court noted "the Bankruptcy Code's goal of encouraging the use of debt repayment plans rather than liquidation," and explained that "[i]f debtors must take the risk that property acquired during the course of an attempt at repayment will have to be liquidated for the benefit of creditors if chapter 13 proves unavailing, the incentive to give chapter 13—which must be voluntary—a try will be greatly diminished." *Id.* On the other hand, in *Matter of Lybrook*, 951 F.2d 136, 137-38 (7th Cir. 1991), the Seventh Circuit held that farm land worth $70,000 that the debtor had inherited while proceeding under Chapter 13 would be included in the Chapter 7 estate upon conversion. The court held that "the Chapter 13 estate passes unaltered into Chapter 7 upon conversion," explaining that "a rule of once in, always in is necessary to discourage strategic, opportunistic behavior that hurts creditors without advancing any legitimate interest of debtors." *Id.*

In 1994, Congress resolved the circuit split by enacting 11 U.S.C. § 348(f), which provides that

> when a case under chapter 13 . . . is converted to a case under another chapter . . . property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion.

*Id.* at § 348(f)(1). On the other hand, "[i]f the debtor converts a case under chapter 13 . . . to a case under another chapter . . . in bad faith, the property of the estate in the converted case shall consist of the property of the estate as of the date of conversion." *Id.* at § 348(f)(2). The House Report accompanying the act explains the purpose of the amendment:

> This amendment would clarify the Code to resolve a split in the case law about what property is in the bankruptcy estate when a debtor converts from chapter 13 to chapter 7. The problem arises because in chapter 13 (and chapter 12), any property acquired after the petition becomes property of the estate, at least until confirmation of a plan. Some courts have held that if the case is

No. 13-50374

converted, all of this after-acquired property becomes part of the estate in the converted chapter 7 case, even though the statutory provisions making it property of the estate do not apply to chapter 7. Other courts have held that property of the estate in a converted case is the property the debtor had when the original chapter 13 petition was filed.

These latter courts have noted that to hold otherwise would create a serious disincentive to chapter 13 filings. For example, a debtor who had $10,000 equity in a home at the beginning of the case, in a State with a $10,000 homestead exemption, would have to be counseled concerning the risk that after he or she paid off a $10,000 second mortgage in the chapter 13 case, creating $10,000 in equity, there would be a risk that the home could be lost if the case were converted to chapter 7 (which can occur involuntarily). If all of the debtor's property at the time of conversion is property of the chapter 7 estate, the trustee would sell the home, to realize the $10,000 in equity for the unsecured creditors and the debtor would lose the home.

This amendment overrules the holding in cases such as *Matter of Lybrook*, 951 F.2d 136 (7th Cir. 1991) and adopts the reasoning of *In re Bobroff*, 766 F.2d 797 (3d Cir. 1985). However, it also gives the court discretion, in a case in which the debtor has abused the right to convert and converted in bad faith, to order that all property held at the time of conversion shall constitute property of the estate in the converted case.

H.R. Rep. No. 103-835, at 57 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3366.

After the passage of § 348(f), it is clear that property acquired after the filing of a Chapter 13 petition, including wages, does not become part of the Chapter 7 estate upon conversion (absent bad faith). Specifically, this means that any funds paid by the debtor to the trustee pursuant to the Chapter 13 plan that have not been distributed at the time of conversion are not transferred to the Chapter 7 estate. However, no statute explicitly states what should happen to these funds. Harris argues that the funds should be returned to him, whereas Viegelahn argues that the funds should be distributed to creditors pursuant to the Chapter 13 plan.

6

## II.     Statutory Arguments

Harris relies upon our opinion in *Stamm* for the proposition that all post-petition wages belong to the debtor upon conversion from Chapter 13 to Chapter 7. However, the holding of *Stamm* is more limited – we held that when a Chapter 13 case is converted *before a plan is confirmed*, wages paid to the Chapter 13 trustee "are not part of the Chapter 7 estate, and must be returned to the Debtors." *Stamm*, 222 F.3d at 217. This is consistent with the Bankruptcy Code, which explicitly states that if a plan is not confirmed, any payments made under a proposed Chapter 13 plan must be returned to the debtor (after certain deductions are made). 11 U.S.C. § 1362(a)(2). However, there is no analogous provision requiring that undistributed payments made pursuant to a confirmed Chapter 13 plan be returned to the debtor. Accordingly, *Stamm* is not controlling here.

Relying on 11 U.S.C. § 348(e), Harris argues that "the Trustee has no authority to disburse funds after her services are terminated." Section 348(e) provides that "[c]onversion of a case . . . terminates the service of any trustee or examiner that is serving in the case before such conversion." However, Harris' argument is obviously not intended to be taken at face value; if the trustee has "no authority to disburse funds," she would be unable to return the funds to Harris as he requests. To the extent that she is still holding funds belonging to someone else, she is plainly a trustee in some real sense, even if her services have been "terminated." *See Redick*, 81 B.R. at 886 ("Even if the Chapter 13 trustee no longer has that title, and no longer has the absolute duty to distribute the funds to the creditors pursuant to the confirmed Chapter 13 plan because the order confirming the plan and the plan have disintegrated, the Chapter 13 trustee is, at the very least, a custodian of funds having the duty to deliver them to the party with the best claim to them."). Moreover, after conversion, a Chapter 13 trustee still has the duty to turn over to the

No. 13-50374

Chapter 7 trustee any records and property of the estate in her possession or control, and to file a final report and account.  Fed. R. Bankr. P. 1019(4) and (5)(B)(ii).  Accordingly, "[t]he language of § 348(e) terminating the trustee's services upon conversion cannot be taken too literally." *In re Parrish*, 275 B.R. 424, 430 (Bankr. D.D.C. 2002).

At least one court has distinguished "post-confirmation reporting duties" from "substantive administrative matters related to a chapter 13 trustee's core responsibilities," holding that the trustee retains the authority to carry out the former duties but not the latter.  *See Michael I*, 436 B.R. at 330-31.  However, "[s]ince Congress intended for the trustee to perform several ancillary duties to clean-up and finalize the administration of the estate, . . . there is no logical reason why distribution of funds pursuant to the previously confirmed reorganization plan cannot be included as one of those administrative duties." *Michael II*, 699 F.3d at 320 n.8 (Roth, J., dissenting).  Although it is clear, and understandable, that the Chapter 13 trustee does not retain any control over assets that have passed into the new Chapter 7 estate and come under the control of the Chapter 7 trustee, *see Perkins*, 36 B.R. at 620, this does not imply that the Chapter 13 trustee likewise loses control over assets outside the Chapter 7 estate.  Even after termination of her services, Viegelahn still has a responsibility to distribute the remaining funds in her possession to the parties with the best claim to them.  Section 348(e) does not establish who, between Harris and his creditors, has the better claim.

Harris also cites *In re Nash*, 765 F.2d 1410, 1413 (9th Cir. 1985), for the proposition that conversion of the case vacates the confirmed plan.  However, *Nash* is inapposite here because it dealt with a dismissal rather than a conversion.  In holding that undistributed funds held by the trustee must be returned to the debtor upon dismissal of a Chapter 13 case, *Nash* relied upon

a statute that pertains only to dismissal,[3] and explicitly distinguished situations involving conversion:

> Even assuming that *Resendez* and *Giambitti* correctly hold that wage deductions received prior to dismissal no longer belong to a Chapter 13 debtor during the administration of the plan, those cases involved a conversion to Chapter 7. They do not address the fact that dismissal revests the property of the estate in the debtor. 11 U.S.C. § 349(b)(3). No similar Bankruptcy Rule or Code provision contemplates the revesting of the estate property upon conversion to Chapter 7.

*Nash*, 765 F.2d at 1414.[4]

Nevertheless, some courts have relied on *Nash* to hold that conversion of a Chapter 13 case "vacates" the Chapter 13 plan such that the trustee has no further authority to make payments to creditors pursuant to the plan. *See Michael I*, 436 B.R. at 329-30; *Boggs*, 137 B.R. at 410. Other courts before *Nash* have reached the same conclusion, for example:

> Upon confirmation of the debtors' Chapter 13 plan, title to the property of the Chapter 13 estate vests in the debtor except as otherwise provided in the plan or the order confirming the plan. 11 U.S.C. § 1327(b) [other citations omitted]. When a Chapter 13 case is converted to a case under Chapter 7, the Chapter 13 plan and the order confirming that plan are no longer in force. *In re Doyle*, 11 B.R. 110, 111 (Bankr. E.D. Pa. 1981). Since the Chapter 13 plan is no longer in effect, the creditors of the Chapter 13 debtor may not claim rights in the undistributed funds superior to the debtor. Thus, the undistributed funds held by the Chapter 13 trustee must be returned to the debtor.

*Peters*, 44 B.R. at 73.

---

[3] "Unless the court, for cause, orders otherwise, a dismissal of a case other than under [Chapter 7] . . . revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case . . . ." 11 U.S.C. § 349(b)(3).

[4] *See also In re Plata*, 958 F.2d 918, 922-23 (9th Cir. 1992) (Brunetti, J., dissenting) (explaining why the reasoning in *Nash* is inapplicable in conversion cases).

No. 13-50374

We do not read so much into the fact that upon conversion, a Chapter 13 plan is "no longer in force." It is clear that after conversion, the debtor's continuing obligations under the plan (such as the obligation to keep making payments to the trustee) cease; likewise, the plan does not continue to bind creditors. However, it does not follow that the plan should thereafter be considered retroactively undone in full, and no statutory authority supports such an interpretation. To the contrary: as discussed above, under the Bankruptcy Code conversion does not eliminate the trustee's power and duty to wrap up certain affairs of the estate. Similarly, there is no reason why prospective termination of the plan necessarily prohibits the trustee from distributing the funds remaining in her possession – which were paid at a time when the plan *was* still in force, and the debtor was still obligated to make payments – pursuant to the plan.

Viegelahn's statutory arguments are likewise unavailing. Relying primarily on 11 U.S.C. § 1326(a)(2), Viegelahn argues that creditors obtain a vested right to receive payments pursuant to a confirmed Chapter 13 plan once the debtor transfers the payments to the trustee. Under 11 U.S.C. § 1326(a)(1)(A), "[u]nless the court orders otherwise, the debtor shall commence making payments not later than 30 days after the date of the filing of the plan or the order for relief, whichever is earlier, in the amount . . . proposed by the plan to the trustee." Furthermore, under 11 U.S.C. § 1326(a)(2), "[i]f a [Chapter 13] plan is confirmed, the trustee shall distribute any such payment [made pursuant to paragraph (1)(A)] in accordance with the plan as soon as is practicable." Some courts have concluded that:

> The word "'shall" in section 1326(a)(2) creates the condition of a trust. Creditors have a right to the funds in an active confirmed chapter 13 plan upon payment by the debtor. The speed by which the chapter 13 trustee makes distribution should not determine the rights of creditors and debtors in the funds. Payments received

10

from debtors from post-petition property before the filing date of the motion to convert are subject to the confirmed chapter 13 plan.

*Waugh*, 82 B.R. at 400; *see also Galloway*, 134 B.R. at 603. Some courts have also noted the language in § 1326(a)(2) providing that "[i]f a plan is not confirmed, the trustee shall return any such payments" made pursuant to paragraph (1)(A), and have reasoned that the absence of a parallel provision dealing with undistributed post-confirmation funds suggests that such funds should *not* be returned to the debtor. *See, e.g.*, *Galloway*, 134 B.R. at 603; *Burns*, 90 B.R. at 304.

Most courts relying on § 1326(a)(2) to find vested rights in creditors have failed to recognize that the "shall distribute" language does not apply to post-confirmation payments made by the debtor to the trustee. One court did in fact recognize this limitation, but discerned a broader congressional purpose:

> While Section 1326(a)(2) does not specifically state that it applies to post-confirmation payments, we do have a congressionally stated intent that upon confirmation payments are to be disbursed pursuant to the plan. Logically, this was intended to include any payments made prior or subsequent to confirmation. When the provision is considered together with the Section 1326(c)[5] requirement that the trustee shall make payments to creditors and the previously noted exceptions of Section 1306 and 1327[6], one can reasonably infer that Congress intended that post-confirmation payments made pursuant to the plan are likewise to be distributed to creditors provided for by the plan.

*Lennon*, 65 B.R. at 137.

This reasoning, however, has been rejected by other courts:

> By its terms, § 1326(a)(2) does not pertain to funds received by a trustee *after* confirmation of a Chapter 13 plan. The cases

---

[5] 11 U.S.C. § 1326(c) states that "[e]xcept as otherwise provided in the plan or in the order confirming the plan, the trustee shall make payments to creditors under the plan."

[6] These provisions are discussed below.

finding "creditor vesting" of post-confirmation payments by implication from § 1326(a)(2) do so without citing legislative history for that proposition. . . .

> . . .

> I cannot conclude that Congress intended legislatively to create trusts for creditors in enacting § 1326(a)(2) and (c); rather, Congress was apparently dealing with the question of when plan payments are to begin, the disposition of funds in the event no plan is confirmed, and who is to handle the funds.

*Boggs*, 137 B.R. at 410. Or, in slightly different terms: "§ 1326(a)(2) and (c) only address the obligation of the trustee to distribute payments in accordance with a confirmed plan; they do not vest creditors with any property rights." *Michael II*, 699 F.3d at 313.

Furthermore, if we were to hold that a debtor's payment of funds to the trustee pursuant to a Chapter 13 plan gives *specific* creditors a vested right to receive the funds, this would not support Viegelahn's actions. Under the plan in this case, $352 from each payment was intended to go to Chase until Harris' mortgage arrears were repaid. After the automatic stay was lifted and Harris' home was foreclosed, Viegelahn placed a hold on these funds rather than distributing them to Chase, which caused funds to accumulate. When Harris converted to Chapter 7, Viegelahn distributed the accumulated funds to other creditors, who would never have received them if they had been distributed to Chase as originally intended. Accordingly, if a right to these funds had vested specifically in Chase (the original intended recipient) when Harris made his payments to Viegelahn, the other creditors would have no right to them. Viegelahn's actual argument seems to be that the debtor's payment of funds to the trustee vests the class of creditors in general with a right to payment. However, we find no support for such a rule in the Bankruptcy Code or in any legislative history.

No. 13-50374

Viegelahn also argues, based on 11 U.S.C. § 1327(a), that Harris "continues to be bound by the terms of the Chapter 13 plan[,] despite his election to convert to Chapter 7[,] with regard to payments made to the Trustee prior to conversion and not yet disbursed to creditors." Section 1327(a) states that "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a). However, it is well settled that upon conversion to Chapter 7, "the chapter 13 plan and the order confirming that plan are no longer in force." *In re Doyle*, 11 B.R. 110, 111 (Bankr. E.D. Pa. 1981); *see also Michael II*, 699 F.3d at 313 ("Conversion to a Chapter 7 case necessarily ends the Chapter 13 case, which also terminates that Chapter 13 estate."). Because it is not generally true that the Chapter 13 plan "continues to bind" the parties after conversion, § 1327(a) does not establish that creditors have a continuing right to payment under the plan after conversion.

In holding that the debtor has a greater right than his creditors to undistributed funds held by the trustee at the time of conversion, the Third Circuit's opinion in *Michael II* relied heavily upon 11 U.S.C. § 1327(b), which states that "[e]xcept as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor."[7] As the court explained:

> In the context of a Chapter 13 case, § 1327(b) vests all property of the Chapter 13 estate in the debtor on confirmation of the plan. Thus when the debtor transfers funds to the Chapter 13 trustee to fulfill its obligations under a confirmed plan (or, as here, wages are assigned directly to the Chapter 13 trustee under a garnishment order), the funds become part of the estate, and the debtor retains

---

[7] Similarly, 11 U.S.C. § 1306(b) states that "[e]xcept as provided in a confirmed plan or order confirming a plan, the debtor shall remain in possession of all property of the estate."

13

a vested interest in them.  Though creditors have a right to those payments based on the confirmed plan, the debtor does not lose his vested interest until the trustee affirmatively transfers the funds to creditors.

*Michael II*, 699 F.3d at 313.

It is true that under §§ 1306(b) and 1327(b), a post-confirmation Chapter 13 debtor generally retains possession of, and a vested interest in, his property, including post-petition wages.  However, *Michael II* errs by ignoring the clear exception to this general rule: "except as otherwise provided in the plan or the order confirming the plan."  If the plan requires the debtor to make payments to the trustee that will be distributed to creditors, the debtor certainly does not retain possession of these payments.   Likewise, it would seem that the confirmation order specifically divests the debtor of any interest he may have in the payments made to the trustee.  In the words of one bankruptcy court:

> When confirmed, the plan governs the relations of the parties and the debtor is bound to make the specified payments provided in the confirmed plan.  These payments are specifically earmarked and set aside for distribution to creditors provided for by the confirmed plan.  To the extent that the confirmed plan provides for payment from debtor's future earnings and the debtor actually makes payment to the trustee pursuant to that plan, the debtor is not entitled to possession nor is the debtor vested with title to such payments.  Sections 1306(b) and 1327(b) specifically except such payments from their provisions since the debtor's right of possession and vesting of title is limited to all sums and property not otherwise provided for in the confirmed plan or confirmation order.  These exceptions to possession and vesting of title in debtor indicate that debtor is to have no continuing interest in payments actually made pursuant to a confirmed plan.

*Lennon*, 65 B.R. at 136.[8]

---

[8] Viegelahn attempts to distinguish *Michael II* on the ground that the Chapter 13 plan in this case specifically provides that "[u]pon confirmation of the plan, all property of the estate *shall not vest in the Debtor(s)*, but shall remain as property of the estate subject to the automatic stay of 11 U.S.C. §362." (Emphasis added).  However, the order confirming the

The Third Circuit also reasoned that "absent anything to the contrary (and we know of nothing), by providing that a debtor who converts in bad faith is not entitled to this post-petition property, § 348(f)(2) logically requires that a debtor receive the property if he acts in good faith." *Michael II*, 699 F.3d at 313-14. The court went on to explain that "if a debtor does not act with bad faith in converting, logically the property should not go automatically to creditors; otherwise the penalty for a bad faith conversion would be diminished significantly." *Id.* at 315. This argument fails to recognize that undistributed post-petition wages paid to the trustee under the Chapter 13 plan constitute only a subset of the debtor's post-petition property. If the debtor is found to have converted in bad faith, *all* of the property he has acquired after filing will be included in the Chapter 7 estate and therefore be liquidated.[9] Accordingly, distributing the remaining payments held by the trustee at the time of conversion neither renders § 348(f)(2) superfluous nor removes the disincentive for bad faith in most cases.

## III.  Considerations of Policy and Equity

Because we find little guidance in the Bankruptcy Code as to whether undistributed funds held by the Chapter 13 trustee at the time of conversion should be returned to the debtor or distributed to creditors, we turn to considerations of equity and policy. When Congress enacted § 348(f) in 1994

---

plan also states that "[s]uch property as may revest in the Debtor shall so revest only upon further Order of the Court or upon dismissal, conversion, or discharge." We find it unnecessary to define with precision the property that "may revest in the Debtor." By requiring Harris to pay part of his wages to the trustee for distribution to creditors, the order clearly did not contemplate that such payments would revest in Harris.

[9] Of course, it is possible that upon conversion, the debtor may no longer have in his possession any property acquired after filing the Chapter 13 petition; in that specific scenario, undistributed wages held by the trustee would constitute all of the debtor's remaining post-petition property.

to clarify that property acquired after filing a Chapter 13 petition would not pass into the Chapter 7 estate upon conversion absent bad faith, the House Report explained that "to hold otherwise would create a serious disincentive to chapter 13 filings." H.R. Rep. No. 103-835, at 57 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3366. Subsequent court opinions have interpreted this legislative history as reflecting a congressional policy of encouraging debtors to attempt repayment through Chapter 13 and removing disincentives that would discourage this. Both the district court in this case and the Third Circuit in *Michael II* placed great weight on this consideration. The district court noted "the Congressional policy of encouraging debtors to attempt a Chapter 13 bankruptcy—through which a debtor will pay his creditors at least as much and likely more than he would have under Chapter 7—without penalty if that attempt fails." The district court further explained that "[h]olding that [the] Debtor is not entitled to the funds at issue in this case would create precisely the kind of disincentive to file a Chapter 13 bankruptcy that Congress was trying to avoid." *See also Michael II*, 699 F.3d at 314-16.

*Bobroff*, which was explicitly approved in the House Report, recognized that "[i]f debtors must take the risk that property acquired during the course of an attempt at repayment will have to be liquidated for the benefit of creditors if chapter 13 proves unavailing, the incentive to give chapter 13— which must be voluntary—a try will be greatly diminished." 766 F.2d at 803. This is certainly true; in *Lybrook*, which was explicitly repudiated in the House Report, the debtor inherited land worth $70,000 while his Chapter 13 plan was in place, and it was subsequently liquidated when he converted to Chapter 7. 951 F.2d at 137-38. Had he initially filed under Chapter 7 rather than attempting to repay his creditors through Chapter 13, he would have been able to keep the land. Accordingly, it is understandable that property acquired while proceeding under Chapter 13 should generally not pass into the Chapter

7 estate upon conversion.  It is always possible that one might unexpectedly acquire some valuable asset, and if the rule were otherwise, proceeding under Chapter 13 would court the risk that any such asset could be lost through liquidation – an obvious disincentive.

On the other hand, it is unlikely that a debtor would be meaningfully deterred by the knowledge that payments made under a confirmed Chapter 13 plan will not be returned to him if he chooses to convert to Chapter 7.  As one court explained, such a rule "will not discourage any individuals from proceeding in Chapter 13, since it simply requires them to fully honor their obligation under a confirmed plan up to the point when they voluntarily wish to terminate the provisions of the plan and have their case dismissed or converted to a Chapter 7 case." *Bell*, 248 B.R. at 240.  Similarly, we fail to perceive how such a rule "penalize[s]" a debtor for attempting Chapter 13. *Boggs*, 137 B.R. at 411.  It is the debtor who proposes the payment plan in the first place, with the explicit provision that the funds are to be used to pay creditors.  Because the funds are out of the hands of the debtor after payment and under the control of the trustee, it is essentially fortuitous whether any undistributed funds are still in the hands of the trustee at the time of conversion.[10]  And "if the undistributed funds revert to [the debtor], instead of being distributed to the creditors in accordance with the plan's terms, [the debtor] would receive a windfall." *Michael II*, 699 F.3d at 320 (Roth, J., dissenting).  Of course, because the debtor can choose to convert to Chapter 7 at any time and thereby avoid making any further payments under the

---

[10] If undistributed funds are returned to the debtor, both the creditors' right to receive the payments and the debtor's chance of having funds returned would be dependent on the trustee's speed in distributing the payments. *See Waugh*, 82 B.R. at 400.

Chapter 13 plan, he retains the power to prevent any additional wages from going into the hands of creditors.

As suggested above, wages paid to the trustee pursuant to the Chapter 13 plan should be distinguished from the debtor's other property acquired after the date of filing. The dissenting opinion in *Michael II* explains this distinction:

> I agree that [§ 348(f)] described what became of property or rights to property acquired by the debtor during the pendency of the Chapter 13 proceedings. I have no argument against this interpretation. Mr. Bobroff keeps his potential tort recovery and Mr. Lybrook keeps the farm land inherited from his father because the tort recovery and the farmland inheritance were not property of the estate as of the date of the filing of the petition. To the extent that Michael's wages were not attached, the amendment also covered these unattached wages earned during the course of the Chapter 13 bankruptcy. . . .
>
> However, we are not dealing simply with wages here but with that portion of the wages that had been attached under the plan and paid to the trustee for distribution to the creditors. I maintain that there is a crucial difference.[11]

*Michael II*, 699 F.3d at 319 (Roth, J., dissenting). We conclude that returning undistributed funds to the debtor is not justified by the policy of encouraging debtors to proceed through Chapter 13 rather than Chapter 7.

Additionally, distribution of the funds to creditors is supported by strong considerations of fairness. As the dissenting opinion in *Michael II* explained, "the debtor makes payments in order to fulfill his obligations under the reorganization plan and in exchange for the benefits he derives from the plan."

---

[11] The next sentence is: "It is my position that, although the debtor's unattached wages earned during the reorganization period will not be included in the Chapter 7 estate, the attached wages that have been paid to the trustee pursuant to the plan should be." *Michael II*, 699 F.3d at 319 (Roth, J., dissenting). This last clause appears to be an error; elsewhere, the dissent argues not that these funds should be included in the Chapter 7 estate, but that they should be distributed by the Chapter 13 trustee pursuant to the confirmed plan.

No. 13-50374

*Michael II*, 699 F.3d at 320 (Roth, J., dissenting).  Or, in other words, "the attached wages are the *quid pro quo* that the debtor has given up during the pendency of the reorganization in return for being permitted to stave off foreclosure and cure the mortgage default, retain the use of his automobile, and enjoy the automatic stay." *Id.*[12]  Generally,

> [t]he benefits of proceeding in Chapter 13 for any given debtor are numerous and varied, including, but not limited to obtaining a 'super discharge,' saving a residence from foreclosure, avoiding a substantial abuse dismissal, cramming down secured assets, and having the benefit of the automatic stay for an extended period of time.

*Bell*, 248 B.R. at 239 n.3.

"Conversion does not retroactively alter this arrangement and undo the benefits the debtor received from the plan." *Michael II*, 699 F.3d at 320 n.8 (Roth, J., dissenting).  Moreover, conversion does not undo the disadvantages that creditors may have suffered as a result of the plan, such as depreciation of secured property.  As one court explained:

> The Court would also observe that in the case at bar and prior to conversion, the Debtors retained possession of and continued to use certain property that was security for certain of their debts.  This is typical of most chapter 13 cases.  The security normally consists of such items as automobiles, homes and household goods and furnishings.  The secured lenders are prohibited from taking possession of their property because the debtor has a confirmed plan which proposes to pay them each month.  It appears to this Court to be patently unfair to allow a debtor to drive and depreciate an automobile, occupy a home or use household goods based on a promise to his creditors in the form of a court approved plan, and then allow the debtor to snatch away the monies which the trustee is holding to make the payments, but has not yet

---

[12] We note that in this case, Harris agreed to give up his automobile to satisfy a debt greater than the value of the automobile.

19

No. 13-50374

disbursed, by allowing the debtor to pick an opportune time to convert.

*O'Quinn*, 143 B.R. at 413. Although, as discussed above, payments made under the plan do not give creditors any vested rights to payment, we conclude that the creditors' claim to the undistributed funds is superior to that of the debtor.

## CONCLUSION

For the reasons explained above, we REVERSE the district court's order and REMAND for further proceedings consistent with this opinion.